Filed 6/27/13  OneBeacon America Ins. v. Super. Ct. CA2/7
(Attached are modification order dated 6/19 and unmodified version of opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ONEBEACON AMERICA INSURANCE COMPANY,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>ROCKWELL AUTOMATION CORPORATION, et al.,<br><br>    Real Parties in Interest. | No. B244628<br><br>(Super. Ct. No. BC327570)<br><br>ORDER MODIFYING OPINION [CHANGE IN JUDGMENT] |

THE COURT:

IT IS ORDERED that the opinion filed herein on June 17, 2013 and modified on June 19, 2013, be modified as follows:

On page 12, the disposition is modified to read:

"Let a peremptory writ of mandate issue directing the trial court to vacate its order of September 14, 2012, granting the motion for summary adjudication, and to enter a new and different order denying the motion.  Petitioner shall recover its costs."

[This modification changes the judgment.]

ZELON, Acting P. J.,                                                   SEGAL, J.[*]

---

[*]   Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/19/13

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ONEBEACON AMERICA INSURANCE COMPANY,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>ROCKWELL AUTOMATION CORPORATION, et al.,<br><br>        Real Parties in Interest. | No. B244628<br><br>(Super. Ct. No. BC327570)<br><br>ORDER MODIFYING OPINION [CHANGE IN JUDGMENT] |

THE COURT:

IT IS ORDERED that the opinion filed herein on June 17, 2013, be modified as follows:

On page 12, the disposition is modified to read:

"Let a peremptory writ of mandate issue directing the trial court to vacate its order of September 14, 2012, granting the motion for summary adjudication, and to enter a new and different order denying the motion."

[This modification changes the judgment.]

ZELON, Acting P. J.,                                    SEGAL, J.[*]

---

[*]  Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/17/13 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ONEBEACON AMERICA INSURANCE COMPANY,<br><br>　　　　Petitioner,<br><br>　　　　v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>　　　　Respondent;<br><br>ROCKWELL AUTOMATION CORPORATION, et al.,<br><br>　　　　Real Parties in Interest. | No. B244628<br><br>(Super. Ct. No. BC327570)<br>(Elihu M. Berle, Judge)<br><br>WRIT OF MANDATE |

ORIGINAL PROCEEDING.  Petition for writ of mandate. Elihu Berle, Judge. Writ granted.

Selman Breitman, Jeffrey C. Segal and Ilya A. Kosten for Petitioner.

No appearance for Respondent.

Latham & Watkins, G. Andrew Lundberg, Karen R. Leviton, Alexandra A. Roje, and Ashley N. Johndro for Real Parties in Interest.

_____

In this complex insurance litigation, OneBeacon America Insurance Company petitions this court for a writ of mandate compelling the trial court to vacate its ruling granting a motion for summary adjudication filed by Rockwell Automation, Inc., Meritor, Inc., and Invensys, Inc. We issued an order to show cause why the trial court should not be compelled to vacate its order and enter a new order denying the motion for summary adjudication, and we now grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner OneBeacon is a successor in interest to three insurance companies that allegedly provided insurance coverage in the 1960s and 1970s to predecessor entities of Rockwell International Company, known by the parties as "Old Rockwell." OneBeacon acknowledges that Old Rockwell would be entitled by operation of law to insurance coverage under the policies issued by OneBeacon's predecessors.

In 1988, Old Rockwell sold its measurement and flow control business to BTR Dunlop pursuant to an asset sale agreement. That agreement was later supplemented by a 1995 agreement between Old Rockwell and BTR Dunlop concerning the allocation of liabilities between the two entities. Through further business transactions, BTR Dunlop became Invensys plc, the parent company of real party in interest Invensys, Inc.

In 1996, Old Rockwell conveyed its "non-aviation/non-defense" or "non-aerospace and non-defense" businesses to Rockwell International Corporation, known as "New Rockwell." Old Rockwell then merged with a subsidiary of Boeing, and that subsidiary subsequently merged with Boeing. New Rockwell underwent a series of name changes and became Rockwell Automation, Inc., a real party in interest.

New Rockwell is alleged to have conveyed its automotive business to subsidiaries of Meritor Automotive, Inc. in 1997 by distribution agreement. Meritor Automotive merged with Arvin Industries, Inc. in 2000 to form ArvinMeritor, Inc., one of the real parties in interest, which has since changed its name to Meritor, Inc.

2

Real parties in interest Rockwell Automation, Meritor, and Invensys (collectively, the Rockwell parties") seek insurance coverage under the policies that were issued by OneBeacon's predecessors to the predecessors of Old Rockwell. The Rockwell parties are defendants and cross-complainants in the instant litigation. OneBeacon is a defendant and cross-defendant.

The litigation has been proceeding in phases. The parties stipulated that the first issue to be adjudicated by the trial court is the "Assignment Issue": "Whether the several transactions between 1988 and 1997, inclusive, involving assets of Rockwell International Corporation, as among the parties to those transactions, assigned or otherwise transferred any interests in or rights under any or all of the Policies to defendants Rockwell Automation, Inc., ArvinMeritor, Inc., and/or Invensys, Inc. (the 'Rockwell Parties')."

On May 6, 2011, the Rockwell parties moved for summary adjudication of the issue of duty: they sought a summary adjudication that based on the insurance policies issued to the predecessors of the Rockwell parties, OneBeacon and the other insurers owed the Rockwell parties the duties running from insurer to insured with respect to asbestos claims that had been asserted against them.

After two hearings on the motion and supplemental briefing, the trial court granted the motion for summary adjudication. OneBeacon subsequently filed the instant writ petition seeking relief from the court's ruling. We issued an order to show cause why the trial court should not be compelled to vacate its ruling and issue a new and different order denying the summary adjudication motion.

## DISCUSSION

I. The Law of Summary Adjudication

"A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or

3

one or more issues of duty, if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs.  A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).)

The party moving for summary adjudication bears the "initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact" with respect to the cause of action, affirmative defense, claim of damages, or issue of duty that is the basis of the motion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); see Code Civ. Proc., § 437c, subd. (p).)  "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar*, at p. 851.)  If the moving party makes such a showing, the burden shifts to the other party to show that a triable issue of one or more material facts exists as to the litigated cause of action, defense, claim of damages, or issue of duty.  (*Id.* at p. 849; Code Civ. Proc., § 437c, subd. (p).)  If the other party does not make this showing, summary judgment in favor of the defendant is appropriate.  If the other party makes such a showing, summary judgment should be denied.  On appeal, we review the trial court's ruling de novo. (*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1548.)

### II.     Summary Adjudication Motion and Ruling

The Rockwell parties moved for a summary adjudication on the issue of duty: they claimed that OneBeacon and the other insurers owed them the duties running from insurer to insured under the insurance policies that had been issued to their predecessors because the rights to the insurance coverage were assigned to them by the various

4

agreements conveying the business operations to them. The Rockwell parties articulated a legal theory that, as a matter of law, the present-day concurrence of the contracting parties as to the meaning of the agreements was conclusive on the issue of whether assignments had occurred, and the insurers, including OneBeacon, had no legal right to dispute the meaning ascribed to the agreements by the successors of the contracting parties.

Pursuant to this theory, the Rockwell parties argued that only one fact was material to the determination of whether they were assigned the insurance coverage at the time they took over various business operations: do the parties to those transactions now agree that the Rockwell parties were assigned insurance coverage? As evidence to establish that no triable issue of material fact existed concerning the concurrence among the Rockwell parties and Boeing as to their present-day construction of the contract, the Rockwell parties submitted certifications by each real party in interest, a further declaration from each certifying officer, and declarations from Boeing officials attesting that each business now agrees that the contracts should be understood as assigning insurance coverage as part of the transactions.

The trial court accepted the Rockwell parties' argument that the present mutual interpretation of the contract language is determinative, and concluded that OneBeacon owes the Rockwell parties the duties running from insurer to insured under the insurance policies that its predecessors had issued to the Rockwell parties' predecessors. The court noted that although the general rule is that contracts are construed in light of the circumstances existing at the time of the making of the contract, that rule developed in the context of parties disagreeing "as to the contractual intent of the initial parties to the contract." But here, the parties to the transaction agreements agreed on their interpretation, and the court concluded that it should not override the mutual understanding of the parties to the contracts absent circumstances in which equitable concerns required a different result.

5

The court found that the Rockwell parties had submitted sufficient evidence to demonstrate Boeing and the Rockwell parties' present shared understanding that the transaction agreements assigned them Boeing's rights to coverage for the asbestos liabilities at issue in the litigation, and that they had met their initial burden on summary adjudication. The insurers' showing in response, the trial court ruled, was insufficient to demonstrate a triable issue of material fact "regarding Rockwell parties' and Boeing's mutual current understanding to be that the Rockwell parties were assigned the specific rights at issue in the present case." Their evidence of statements made in another action involved different policies, issued by different insurers, covering different businesses, and those statements were not inconsistent with Boeing's "current recognition that it assigned specific rights of the policies at issue here to the Rockwell parties." The insurers' evidence on the issue of what the court called "historical intent"—intent at the time of the transaction agreements—was "immaterial," because "the parties' present understanding must control." Evidence of Boeing's intent prior to entering the transaction agreements was "immaterial as to what the contracting parties ultimately decided was the meaning of the transaction agreements, and, therefore, the court concludes that the evidence regarding Boeing's prior musings is insufficient to raise [a] triable issue of material fact."

The court concluded that OneBeacon and the other insurers had not presented evidence showing that as a matter of equity the court should depart from the general rule that the contracting parties' mutual understanding of the contract is conclusive on its interpretation. At most, the court found, they had argued that the Rockwell parties could change the intent and meaning of the transactions at any time, leading to a potentially different understanding of the meaning of the transaction agreements at any point in the future, but this argument was insufficient to establish a triable issue of material fact because the insurers presented no evidence of detrimental reliance, a contrary position, potential double recovery, or any other equitable concern.

Accordingly, the trial court concluded, the Rockwell parties had established that they were entitled to summary adjudication of the issue of duty in their favor, although

6

the specific details of the duties owed under each policy remained to be determined later in the action.

### III. The Motion for Summary Adjudication Should Have Been Denied

#### A. Relevant Law on Intent and Contract Interpretation

Although OneBeacon raises a number of procedural challenges to the grant of summary adjudication, we address the central substantive question underlying the motion for summary adjudication: Is the mutual present interpretation of a contract by the successors of the contracting parties determinative of the meaning of the contract as it relates to the question of duty? While there appears to be some debate whether California or New York law applies to this question, under either state's law the outcome is the same.

Under both California and New York law, the fundamental goal of contract interpretation is to carry out the mutual intention of the parties at the time of contracting.[1] California Civil Code section 1636 provides, "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." In New York, "[i]t is well settled that [the court's] role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract." (*Evans v. Famous Music Corp.* (N.Y. 2004) 807 N.E.2d 869, 872.) The trial court's conclusion that the parties' mutual present understanding as to the meaning of contracts entered into by their predecessors conclusively establishes the

---

[1] The parties' intent is a question of fact when resort to extrinsic evidence is required to ascertain their intent. (*Abifadel v. CIGNA Ins. Co.* (1992) 8 Cal.App.4th 145, 159; *Ashland Management v. Janien* (N.Y. 1993) 624 N.E.2d 1007, 1009.) One of the agreements involved in this litigation has already been determined to be ambiguous with respect to the assignment of coverage. We are not called upon here to determine whether the remaining agreements are ambiguous; the Rockwell parties and OneBeacon appear to agree that the intent of the parties on the issue of assignments cannot be determined here from the language of the contracts, as each party predicates its arguments on the need to look at evidence other than the contractual language.

7

meaning of those contracts contravenes this principle. Present-day concurrence between the successors to the original parties to the contracts as to how they now contend the contracts should be interpreted is neither equivalent to nor determinative of the objectively manifested intent of the original contracting parties at the time they entered into the contracts. (See *Steller v. Sears, Roebuck and Co.* (2010) 189 Cal.App.4th 175, 184-185 [intent of parties determined based on objective manifestations of agreement and expressions of intent]; *Brown Bros. Elec. Contrs., Inc. v. Beam Constr. Corp.* (N.Y. 1977) 361 N.E.2d 999, 1001 [look to "the objective manifestations of the parties as gathered by their expressed words and deeds" when determining whether a contract was formed and what were the terms].)

Because the goal of contract interpretation is to carry out the mutual intention of the parties at the time of contracting, the central question on the issue of duty here is the mutual intention of the parties at the time of contracting with respect to the assignment of insurance coverage, if any mutually held intent existed. The Rockwell parties' motion for summary adjudication was not directed toward establishing that no triable issue of material fact existed on this issue, and the evidentiary showing did not pertain to intent at the time of entering into the contract. Accordingly, the Rockwell parties failed to meet their initial burden to demonstrate no triable issue of fact existed as to duty, and the trial court should have denied their motion for summary adjudication. (Code Civ. Proc., § 437c, subd. (p).)

B.     Rockwell Parties' Arguments

We are not persuaded by the Rockwell parties' arguments for disregarding the central precept that the meaning of the contract is the meaning that the parties ascribe to it at the time of contracting. First, the Rockwell parties rely upon section 201(1) of the Restatement (Second) of Contracts. Restatement (Second) of Contracts, section 201 provides that if the parties attach the same meaning to a contract or contract term, the

8

contract is interpreted in accordance with that meaning; but if the parties differ in the meaning they attach to a contract or term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made that party did not know of or had no reason to know of any different meaning attached by the other, but the other knew or had reason to know the meaning attached by the first party. (Rest. 2d. Contracts, § 201.) Not only does section 201, when read in its entirety rather than taking one subdivision in isolation, appear to concern the meaning held by the parties at the time of contracting, but also the Restatement cannot supersede California and New York law that the intent at the time of contracting is the intent to be effectuated when interpreting a contract. (Cal. Civ. Code, § 1636; *Evans v. Famous Music Corp.*, *supra*, 807 N.E.2d at p. 872.)

Next, the Rockwell parties rely upon *Insurance Corporation of America v. Dillon, Hardamon & Cohen* (N.D. Ind. 1988) 725 F.Supp. 1461, in which the parties to an insurance contract agreed on the amount of coverage provided by the policy per policy year, and the insurer argued that when an insurer and insured agree on the interpretation of a particular provision, that agreement ends all inquiry into the meaning of the contract. (*Id*. at pp. 1464-1465.) While the district court did find attractive the mutual-agreement argument advanced by the insurer, noting that it "has much to recommend it" (*id*. at p. 1465), the court did not accept the insurer's argument and treat the agreement between the parties as conclusive. Instead, after acknowledging the persuasiveness of that argument, the district court ruled that the agreement or disagreement of the parties was ultimately irrelevant because the insurance contract was not ambiguous and could reasonably be interpreted in only one way. (*Id*. at pp. 1465-1467.) Moreover, this approach to contract interpretation may have appealed to the *Dillon* court because it was applying Indiana law, which the court did not understand to require determination of the intent of the parties at the time of contracting: The *Dillon* court described its obligation "to ascertain and enforce the intent of the parties," but the court did not appear to believe itself restricted to ascertaining and enforcing the intent of the parties at any particular point in time. (*Id*. at p. 1464.) A court applying California or New York law is, in

9

contrast to the *Dillon* court, properly focused on the intent of the parties at the time they entered into the contract in question. (Cal. Civ. Code, § 1636; *Evans v. Famous Music Corp.*, *supra*, 807 N.E.2d at p. 872.)

Last, the Rockwell parties assert without supporting authority that the principle that contracts are to be interpreted in accordance with the intent of the parties at the time of contracting "simply has no application where, as here, the contracting parties are in accord on that intent . . . ." The Rockwell parties, however, did not present evidence in conjunction with their summary adjudication motion of any accord as to intent at the time the contracting parties entered into the contracts regarding assignments of insurance coverage. Their evidentiary showing was limited to establishing a shared present-day understanding of the contracts, and they argued that evidence pertaining to intent at the time of contracting was irrelevant and immaterial.

The Rockwell parties' position that the contracting parties' present day agreement is paramount and conclusive on the meaning of the contracts with respect to assignments fails not only because it contravenes California and New York law on the interpretation of contracts, but also because it presents significant potential for abuse. This view amounts to an assertion that when two parties enter into a contract that impacts the obligations of a third party, then regardless of what the contract terms provide,[2] the parties to that contract (or their successors) may, at any point in the future, decide what they at that juncture wish the contract to mean with respect to the third party, then compel the third party to comply with their later-selected interpretation. The affected third party has no recourse, no matter what the parties have later decided their earlier contract obligated the third party to do, for to resist the latter-day agreement about the earlier contract would make the third party an "officious intermeddler." Or, to place this

---

[2]  It is not clear that the Rockwell parties' argument is limited to circumstances in which a contract's language is ambiguous. As they maintain that "the parties to a contract have the first and last word on what it means" and that "when the parties to a contract agree on what it means, the courts enforce that meaning," the logical impact of this argument is that the parties' present construction of any contract language, so long as it is mutually held, could not be questioned—appears to make no distinction between contracts that are ambiguous and contracts that are not.

10

argument in the context of the factual allegations in this case, Boeing and the Rockwell parties can in 2011 agree to interpret their contracts dating from 1988 to 1997 as having assigned insurance coverage rights in the subject transactions. Then, by virtue of this 2011 agreement, they may compel the insurers that issued numerous insurance policies decades earlier to cover claims made against the Rockwell parties—regardless of what the contracting companies intended to happen to the insurance coverage at the time they entered into the contracts. The insurers apparently have no ability to constrain or challenge the interpretation of the successors to the contracting parties despite the obvious impact on their obligations, nor does the court appear to have any role except to enforce whatever Boeing and the Rockwell parties in the present day agree about what they would like those contracts to have accomplished with respect to assigning insurance coverage. This cannot be the law.

We conclude that because the mutual present interpretation of a contract by the successors of the contracting parties is not determinative of the meaning of the contract, the Rockwell parties' motion for summary adjudication and accompanying evidentiary showing were insufficient to demonstrate that no triable issue of material fact existed as to the issue of duty. (Code Civ. Proc., § 437c, subd. (p).) The trial court erred in granting the motion for summary adjudication.[3]

## DISPOSITION

The writ of mandate is issued directing the trial court to vacate its order of September 14, 2012, granting the motion for summary adjudication, and to enter a new and different order denying the motion.

---

[3] Our conclusion that the summary adjudication was improperly granted on substantive grounds makes it unnecessary to address OneBeacon's claims that the summary adjudication was procedurally improper.

11

ZELON, J.

We concur:



WOODS, Acting P. J.



SEGAL, J.*

---

\* Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12