KATHLEEN S. SIMPSON AND GEORGE T. SIMPSON, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26619–11.  Filed October 28, 2013.

P–W sued E, her employer, for employment discrimination under California's Fair Employment and Housing Act (FEHA), claiming, among other things, that she was entitled to compensatory damages for, among other things, physical injuries. After the State court dismissed all but one claim alleged in the suit, P–W's attorney concluded that P–W would not be able to extract a settlement from E on the basis of the one remaining FEHA claim. P–W's attorney learned, however, that P–W was eligible for workers' compensation benefits under California's workers' compensation laws. On that basis alone, P–W and E engaged in settlement discussions and eventually entered into a settlement agreement by which P–W released E from "each and every claim" she might have against E, "including, but not limited to, claims asserted in" the FEHA lawsuit; the settlement agreement did not specifically mention P–W's possible workers' compensation claims. Neither P–W nor E submitted the settlement agreement to the California Workers' Compensation Appeals Board (WCAB) for the approval required under California's workers' compensation laws. Ten percent of the settlement award was attributable to P–W's personal physical injuries and physical sickness. *Held*: None of the settlement payment P–W received is excludable from Ps' gross income under I.R.C. sec. 104(a)(1) because P–W did not obtain the requisite approval from the

WCAB required by the State's workers' compensation laws. *Held*, *further*, 10% of P–W's settlement award is excludable from Ps' gross income under I.R.C. sec. 104(a)(2) and the newly amended regulations under that section, which exclude damages from income as long as recovery is for personal physical injuries or physical sickness even if recovery is under a statute that does not provide for a broad range of remedies and even if the injury is not defined as a tort under State or common law. *Held*, *further*, the portion of the settlement award allocated to attorney's fees and court costs is deductible under I.R.C. sec. 62(a)(20).

*Elizabeth L. Riles* and *David C. Anton*, for petitioners.
*Matthew D. Carlson*, for respondent.

LARO, *Judge*: Respondent determined a Federal income tax deficiency of $73,407 for 2009 and an accuracy-related penalty under section 6662(a) of $14,681.[1] Petitioners, while residing in California, timely petitioned this Court to redetermine respondent's determination. Following respondent's concession that petitioners are not liable for the accuracy-related penalty, we decide: (1) whether any portion of $250,000[2] petitioners received in 2009 in settlement of a dispute with Sears, Roebuck & Co. (Sears) is excludable from their gross income under section 104(a)(1) or (2). We hold it is not excludable under section 104(a)(1) but excludable under section 104(a)(2) to the extent set out in this Opinion; and (2) whether section 62(a)(20) allows petitioners to deduct $152,000 of attorney's fees and court costs as an above-the-line deduction. We hold it does.

FINDINGS OF FACT

The parties filed with the Court a stipulation of facts and related exhibits. Those facts and exhibits are incorporated in this Opinion by this reference. We find the facts accordingly.

Ms. Simpson started working for Sears in 1972 and performed various jobs such as data retrieval, project management, compensation management, and human resources. In

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code (Code) in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The actual settlement amount was $262,500, which included $12,500 for lost wages and benefits. Petitioners included the $12,500 in their gross income for 2009, and the $12,500 is not at issue.

the latter part of the 1990s Ms. Simpson began taking on more responsibilities and was promoted to manager of a small store in Prescott, Arizona, a position she held for about 18 months. Subsequently, she was promoted to a district-level position as a merchandise manager assisting the stores to purchase and assort hardware and lawn and garden merchandise. Two years after that, in October 2000 Ms. Simpson was transferred to manage another Sears store in Fairfield, California.

The Fairfield store was much larger than the Prescott store, e.g., the Fairfield store had three times the sales volume and a fuller assortment of merchandise than the Prescott store. In addition, Ms. Simpson knew that the Fairfield store was a problem store in that the prior store manager and prior numerous management and staff were terminated and almost the entire staff had less than one year of management experience.

Because of the problems at the store and the need to provide relief to the staff, Ms. Simpson had to work long hours, sometimes 50 to 60 hours a week in addition to her three-hour daily commute. In addition, Ms. Simpson had to fill in for some of her sales managers and engage in strenuous physical activities such as receiving, unpacking, and stocking merchandise, moving garments from racks, and ripping plastic. The physical exertion resulted in injuries to her shoulders, to her left knee, and to her neck. Ms. Simpson became exhausted, lost 25 pounds, and considered committing suicide. She sought counselors and physicians for treatment and was ultimately diagnosed with clinical depression, irritable bowel syndrome, and fibromyalgia.

In March 2002 Ms. Simpson approached Sears' district human resources manager, Nancy Mallory, and informed her of the diagnoses and the physical problems Ms. Simpson was experiencing. Ms. Simpson also told Ms. Mallory that her sickness was work related and that on the advice of her doctor, she wanted to transfer to another position. Ms. Simpson fully expected Ms. Mallory to refer the issue to management and to provide a reasonable solution.

Ms. Mallory never informed anyone within Sears of the information Ms. Simpson provided in the March 2002 meeting. Nor did Ms. Mallory tell anyone that Ms. Simpson

had requested a transfer because of her work-related clinical depression and physical illness.

After not hearing back from Ms. Mallory about her complaints, Ms. Simpson spoke to Sears' district manager in June of the same year and advised him of the diagnoses. Ms. Simpson also explained to the district manager that her clinical depression and physical sickness were work related and requested that she be transferred to another position. Sears never transferred Ms. Simpson to another position. In August 2002, Sears terminated Ms. Simpson's employment. No one at Sears ever provided Ms. Simpson with a California Workers' Compensation Claim Form or with information about filing such a claim.

Ms. Simpson continued to suffer from depression and work-related physical injuries after her termination, and she remained unemployed for one year. She was then able to secure a retail position with a home improvement retail chain where she had to quit after a month because of the limitations imposed by her mental and physical problems. She eventually secured employment with the State of California in a human resources position and remains employed there today.

After termination of her employment with Sears, Ms. Simpson retained David Anton to file a lawsuit against Sears under California's Fair Employment and Housing Act (FEHA). The first amended complaint alleged in the first cause of action a claim for employment discrimination on the basis of gender, age, and harassment in violation of Cal. Gov't Code sec. 12940(a), (j), and (k) (West 2011). The first cause of action claimed that Ms. Simpson experienced lost wages, lost employment benefits, emotional distress, and mental pain and suffering. The second cause of action alleged retaliation in employment in violation of Cal. Gov't Code sec. 12940(h) and claimed Ms. Simpson experienced lost wages, lost employment benefits, emotional distress, and mental pain and suffering resulting in physical injury.

The third cause of action alleged two claims. One claim under Cal. Gov't Code sec. 12940(m) alleged that Sears failed to provide a reasonable accommodation of a job transfer for Ms. Simpson after learning of her work-related mental disability. The other claim under Cal. Gov't Code sec. 12940(n) alleged that Sears failed to engage in an interactive process

with Ms. Simpson when it learned that Ms. Simpson had a work-related mental disability, was receiving treatment, and had asked to be transferred to another position because of the disability. The third cause of action alleged that Ms. Simpson suffered lost wages and employment benefits, emotional distress, mental pain and suffering, and physical injury. Ms. Simpson sought economic damages (e.g., back and future pay), noneconomic damages (e.g., compensatory damages for emotional distress), punitive damages, interest, attorney's fees and costs, and appropriate injunctive relief.

Sears filed a summary judgment and adjudication motion that was heard in May 2009. The State court granted Sears' motion on the first and second causes of action. As to the third cause of action, the State court granted Sears' motion on the claim under Cal. Gov't Code sec. 12940(m) but allowed the claim under Cal. Gov't Code sec. 12940(n) to go forward. In reaching its decisions, the State court found Ms. Simpson could not prove that Sears had fired her for reasons other than poor job performance or that her transfer to another position within Sears would have been a reasonable accommodation.

Ms. Simpson and Sears later engaged in settlement discussions. Mr. Anton concluded that as a result of the State court's findings, Ms. Simpson would not be able to claim damages for lost wages or emotional distress on the basis of Sears' failure to engage in an interactive process required under Cal. Gov't Code sec. 12940(n).[3] However, Mr. Anton's research led him to conclude that Sears' failure to give Ms. Simpson a California Workers' Compensation Claim Form and a notice of potential eligibility for benefits that were required under California's workers' compensation laws, *see* Cal. Lab. Code secs. 5400–5413 (West 2011), violated Sears' legal obligations under those laws.

Mr. Anton relayed his conclusion to Sears' counsel and asserted that Ms. Simpson would have been entitled to certain workers' compensation benefits, including benefits for temporary disabilities and permanent disabilities resulting

---

[3] We do not express any opinion as to whether Mr. Anton's assessment was supported by the facts and the law underlying Ms. Simpson's FEHA claims.

from work-related injuries, if she had filed such a claim. [4] Mr. Anton believed these workers' compensation benefits were the only damages available to Ms. Simpson, and he formulated a settlement proposal on that basis alone. He hypothesized the weekly temporary disability benefits that Ms. Simpson would be entitled to receive under California's workers' compensation laws (approximately $500) as well as an additional 25% penalty that could be imposed on Sears for failing to advise Ms. Simpson of potential workers' compensation eligibility and benefits, as the amount of temporary disability benefits owing to Ms. Simpson. Mr. Anton referenced the Schedule for Rating Permanent Disabilities issued under California workers' compensation laws as the amount of permanent disability award Ms. Simpson would be entitled to receive. These two amounts formed the sole basis of a settlement agreement that Ms. Simpson and Sears later entered into in June 2009 as to Ms. Simpson's lawsuit against Sears.

In exchange for the release, Sears agreed to pay under the settlement agreement $12,500 to Ms. Simpson as to her claim for lost wages and employment benefits; $98,000 to Ms. Simpson as to her claims for "emotional distress, physical and mental disability"; and $152,000 to Mr. Anton for attorney's fees and court costs. Mr. Anton understood that the $98,000 was intended to compromise Ms. Simpson's claim for workers' compensation benefits for "emotional distress and physical and mental disabilities" that she suffered from work-related injuries, i.e., clinical depression, irritable bowel syndrome, and fibromyalgia, while working for Sears, and he attributed 10% to 20% of the $98,000 to the work-related physical illness and disabilities Ms. Simpson suffered. The settlement agreement provides that California laws govern the contract and states that

> SIMPSON expressly waives, releases and forever discharges the Company from each and every claim, whether known or unknown that SIMPSON has, had, or might have, arising out of, or related to, any events occurring up to the date this Agreement is fully executed, *including, but not limited to*, claims asserted in * * * [the FEHA lawsuit]. SIMPSON also promises that she will not seek any further com-

---

[4] Mr. Anton had initially argued for vocational retraining benefits in addition to temporary disability and permanent disability benefits but did not include these benefits in the final settlement value.

pensation for any other claimed damages, costs or attorneys' fees in connection with the matters encompassed in this Agreement. [Emphasis added.]

Ms. Simpson never filed a workers' compensation claim, and Sears and Ms. Simpson never submitted the settlement agreement to the California Workers' Compensation Appeals Board (WCAB) for the approval required under Cal. Lab. Code sec. 5001 (West 2011). Mr. Anton was not aware of the approval requirement.

Petitioners timely filed their 2009 Federal income tax return with the assistance of H&R Block. The 2009 return reported as income the $12,500 payment that Sears made to Ms. Simpson for lost wages and employment benefits. The 2009 return did not report anything else from the settlement. Petitioners attached to the 2009 return a letter dated March 18, 2010, from Mr. Anton, explaining the nature of the $250,000 proceeds reported in petitioners' Form 1099–MISC, Miscellaneous Income, received from Sears and why petitioners were not reporting any portion of it. The letter stated the following:

The listed amount includes amounts that were paid to my office for attorney's fees and costs, which my office is reporting as income, in the amount of $113,985.60, for a net to Ms. Simpson from the $250,000.00 of $136,014.40. Due to the nature of the claim that was settled, although I am not Ms. Simpson's tax adviser, I understand that the settlement proceeds should not be considered taxable.

\*   \*   \*   \*   \*   \*   \*

\* \* \* [On the summary judgment and adjudication motion, the] Judge found that there was evidence that the Human Resources Manager failed to take any action or interact with anyone at the company as a result of the information that Ms. Simpson was sick and disabled as a result, and failed to advise the direct managers over Ms. Simpson of the illness and resulting disability. The Human Resources Manager should have considered placing Ms. Simpson on Workers' Compensation disability leave, or on Short Term Disability leave, but did not do so.

The settlement was entirely based upon the claim that Ms. Simpson became ill due to work, became disabled due to the severity of that illness, and Ms. Simpson should have been accommodated by being provided Workers' Compensation or Short Term Disability Leave, but was not. It is our understanding that a lawsuit settlement based on illness and disability from work are non-taxable settlement proceeds to the injured taxpayer.

On April 25, 2011, respondent issued to petitioners a notice of deficiency in which he determined that petitioners failed to report the $250,000 settlement proceeds as income. In response, petitioners filed the instant petition.

### OPINION

Gross income includes all income from whatever source derived, sec. 61(a); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955), unless specifically excluded. Under section 104(a)(1), "amounts received under workmen's compensation acts" to compensate for personal injuries or sickness are excluded from income. Section 104(a)(2) excludes from income the amount of any damages (other than punitive damages) received (by suit or agreement) on account of personal physical injuries or physical sickness.

Adjusted gross income means gross income less certain enumerated deductions. Sec. 62(a). One of these deductions is a deduction for attorney's fees and court costs paid by, or on behalf of, a taxpayer in connection with any action involving a claim of unlawful discrimination. Sec. 62(a)(20).

Petitioners argue primarily that the entire settlement amount in issue, $250,000, is excludable from gross income under section 104(a)(1) as an amount received under California's workers' compensation laws. Petitioners argue alternatively that (1) up to 20% of the $98,000 settlement figure allocated to "emotional distress and physical and mental disabilities" is excludable from gross income under section 104(a)(2) as an amount received on account of personal physical injuries and physical sickness and that (2) petitioners are entitled to deduct under section 62(a)(20) $152,000 allocated to attorney's fees and court costs in connection with Ms. Simpson's FEHA action involving unlawful discrimination claims.

### I. *Burden of proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and a taxpayer bears the burden of proving those determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). It is well established that statutory exclusions, such as those provided in section 104, are to be narrowly construed, *see*

*Commissioner v. Schleier*, 515 U.S. 323, 328 (1995), and that taxpayers generally bear the burden of proving that they fall squarely within the requirements for any exclusion from gross income, *Forste v. Commissioner*, T.C. Memo. 2003–103, 85 T.C.M. (CCH) 1146, 1151 (2003).

At trial, petitioners conceded that the burden of proof falls on them. In their posttrial brief, however, petitioners for the first time request the Court to shift the burden of proof to respondent under section 7491(a).[5] We find that petitioners conceded this issue at trial and that their request made in the posttrial brief to shift the burden of proof to respondent prejudices respondent and is untimely. *See Dunne v. Commissioner*, T.C. Memo. 2008–63, 95 T.C.M. (CCH) 1236, 1240 (2008); *Smith v. Commissioner*, T.C. Memo. 2007–368, 94 T.C.M. (CCH) 574, 581 (2007), *aff'd*, 364 Fed. Appx. 317 (9th Cir. 2009); *Deihl v. Commissioner*, T.C. Memo. 2005–287, 90 T.C.M. (CCH) 579, 584 (2005). At a minimum, respondent has not been afforded an opportunity to test petitioners' allegations, either by cross-examination or by producing evidence, that petitioners have complied with the substantiation and recordkeeping requirements under section 7491(a)(2).

## II. *Exclusion from income*

Gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness" as well as "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". Sec. 104(a)(1) and (2). When a taxpayer receives a payment under a settlement agreement, as is the case here, the nature of the claim that was the actual basis for settlement guides our determination of whether such payments are excludable from income. *See United States v. Burke*, 504 U.S. 229, 237 (1992). Whether a settlement is achieved through a judgment or by a compromise agreement, the question to be asked is: "In lieu of what were the damages

---

[5] Neither the petition nor petitioners' pretrial brief asked the Court to shift the burden of proof to respondent under sec. 7491(a).

awarded?" *Fono v. Commissioner*, 79 T.C. 680, 692 (1982), *aff'd without published opinion*, 749 F.2d 37 (9th Cir. 1984). [6]

### A. *Sears' intent*

What Ms. Simpson and Sears intended to compromise through the settlement agreement is a question of fact, *see Bagley v. Commissioner*, 105 T.C. 396, 406 (1995), *aff'd*, 121 F.3d 393 (8th Cir. 1997), determined by reference to the express language of the agreement, *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965), *aff'g* T.C. Memo. 1964–33. If we cannot find evidence of the parties' express intent in the settlement agreement specifying the purpose of the compensation, we look to the payor's intent. *Rivera v. Baker West, Inc.*, 430 F.3d 1253, 1257 (9th Cir. 2005); *Knuckles v. Commissioner*, 349 F.2d at 613; *see also Fono v. Commissioner*, 79 T.C. at 696 (stating that payee's belief as to reasons for payment is relevant evidence although ultimate inquiry is into payor's reasons for payment); *cf. Commissioner v. Duberstein*, 363 U.S. 278, 285–286 (1960) (stating that transferor's intention is most crucial consideration in determining whether payment is gift). Under California law, which governs the interpretation of Ms. Simpson's settlement agreement with Sears, we must consider all credible evidence to determine whether the language of the agreement is fairly susceptible of more than one interpretation, and if it is, we must consider extrinsic evidence relevant to prove which one of these meanings reflects the intent of the contracting parties. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39–40 (1968).

The settlement agreement is ambiguous as to whether it was made to settle Ms. Simpson's FEHA claims, her workers' compensation claims, or both. The preamble of the agreement broadly states that Sears and Ms. Simpson desired to resolve all claims Ms. Simpson raised or could have raised in the

---

[6] *United States v. Burke*, 504 U.S. 229 (1992), and *Fono v. Commissioner*, 79 T.C. 680 (1982), *aff'd without published opinion*, 749 F.2d 37 (9th Cir. 1984), deal with agreements to settle personal injuries claims in the context of sec. 104(a)(2). While sec. 104(a)(1) does not explicitly mention settlement, we find it helpful here to look to cases like *Burke* and *Fono* to determine whether a settlement for a workers' compensation claim sanctioned by a State's workers' compensation laws can be excludable under section 104(a)(1).

FEHA lawsuit as well as "any other matters involving SIMP-SON's former employment relationship with * * * [Sears]", but it falls short of expressly including Ms. Simpson's workers' compensation claim. Indeed, the settlement agreement includes multiple references to the FEHA lawsuit but does not mention Ms. Simpson's potential workers' compensation claims at all. But we also accept Mr. Anton's credible testimony that he had advised Sears' counsel that his client was eligible to make such claims. In the light of this fact, the broad and inclusive general release in the settlement agreement ought to place Ms. Simpson's workers' compensation claims under the settlement agreement although the agreement itself does not state so expressly.

Ambiguity also arises where California's workers' compensation laws specifically require that any compromise agreement to settle such workers' compensation claims be submitted to the WCAB for approval, and the parties did not do so here. From this fact one may infer that the parties, who were represented by presumably competent counsel, did not contemplate any potential workers' compensation claim. *See Steller v. Sears, Roebuck & Co.*, 189 Cal. App. 4th 175, 182 (Ct. App. 2010). Because extrinsic evidence before us exposes a latent ambiguity in Ms. Simpson's settlement agreement with Sears, we must consider extrinsic evidence to determine the parties' intent. *See id.* at 183 (finding ambiguity in settlement agreement and concluding on extrinsic evidence that settlement encompassed workers' compensation claim and disability discrimination claim).

We find Ms. Simpson and Mr. Anton to be generally credible. Ms. Simpson testified that she believed the settlement agreement was made to settle her one remaining FEHA claim (i.e., Sears' failure to engage in an interactive process under Cal. Gov't Code sec. 12940(n)) and her workers' compensation claims. Mr. Anton testified that he saw no damage potential on the basis of the one remaining claim in the FEHA lawsuit and concluded that he could extract a settlement from Sears only on the basis of Ms. Simpson's entitlement to workers' compensation benefits. Mr. Anton also testified credibly that the $98,000 amount was determined by reference to the disability benefits provided under California's workers' compensation laws for the "emotional distress, physical and mental disability" that Ms. Simpson suffered while

employed at Sears. He further testified credibly that 10% to 20% of the $98,000 portion of the settlement amount was attributable to personal physical injuries (other than emotional distress). Viewing the entire record before us, we find that Sears and Ms. Simpson intended to settle her workers' compensation claims and that a portion of the settlement was made to compensate her for her work-related personal physical injuries and sickness.

B. *Section 104(a)(1)*

The intent of the parties to a settlement of a workers' compensation claim does not necessarily mean that the payment is excludable under section 104(a)(1), however.[7] Section 104(a)(1) excludes from gross income amounts received by an employee under a workers' compensation act or under a statute in the nature of a workers' compensation act that provides compensation to employees for occupational personal injuries or sickness. Sec. 1.104–1(b), Income Tax Regs. To qualify for the exclusion, a taxpayer must show that she received her benefits *under* a statute or a regulation. *Rutter v. Commissioner*, 760 F.2d 466, 468 (2d Cir. 1985), *aff'g* T.C. Memo. 1984–525. In other words, unless payments are made pursuant to "'a rule of general applicability promulgated by a public agency to govern conduct within the agency's jurisdiction'", a taxpayer cannot exclude the payments from gross income under section 104(a)(1). *Wallace v. United States*, 139 F.3d 1165, 1167 (7th Cir. 1998) (quoting *Rutter v. Commissioner*, 760 F.2d at 468). Thus, for Ms. Simpson's settlement payment to be an amount "received under workmen's compensation acts", the settlement agreement must comply with the statutory requirements to be valid under California's workers' compensation laws and not go beyond the scope of such laws.[8]

California's workers' compensation laws set up a strict regime for parties to validly settle a workers' compensation

---

[7] It is conceivable that under certain statutory regimes, parties may privately settle a workers' compensation claim pursuant to a statute without State action. These are not the facts of this case, and we need not discuss hypotheticals.

[8] For example, compensation received for an occupational injury or sickness in excess of the amount provided in the applicable workers' compensation act is not excludable. Sec. 1.104–1(b), Income Tax Regs.

claim under those laws. The laws provide a rule of general applicability requiring that the WCAB approve any release of or agreement to compromise an employer's liability for workers' compensation benefits before the agreement or release could become valid. Cal. Lab. Code sec. 5001. The same laws also require that the parties file the signed release or compromise agreement with the WCAB for the board to enter the award based on the release or compromise agreement. *Id.* sec. 5002. Petitioners have acknowledged that they never submitted the settlement agreement in issue to WCAB for approval, nor did they obtain the required approval from the board. Mr. Anton apparently was not aware of these requirements under Cal. Lab. Code secs. 5001 and 5002.

Because the settlement agreement fails to meet the express requirement of California's workers' compensation laws to obtain approval from the WCAB, any payments received under the agreement cannot be payments received under or pursuant to the State's workers' compensation act. The aggregate payments of $250,000 petitioners received under the settlement agreement are merely payments made under a private contract, *cf. Rutter v. Commissioner*, 760 F.2d at 468, that has no force or effect under California's workers' compensation laws, *see Steller*, 189 Cal. App. 4th at 181–182; *Raischell & Cottrell, Inc. v. Workmen's Comp. Appeals Bd.*, 249 Cal. App. 2d 991, 997 (Ct. App. 1967).

A recent California State court decision informs our conclusion. The State court in *Steller* was confronted with facts very similar to those here. There, an employee sued her employer for disability discrimination and was simultaneously pursuing a workers' compensation claim against her employer. *Steller*, 189 Cal. App. 4th at 178. The parties entered into an agreement to settle all of the employee's claims that arose from the lawsuit and related to her employment; the settlement agreement did not expressly mention the pending workers' compensation action. *Id.* at 179. The trial court entered a judgment in the disability discrimination action according to the terms of the compromise agreement. *Id.* The record did not show that the parties were aware of the approval requirement or contemplated obtaining the WCAB's approval. *Id.* at 181.

On appeal, the California Court of Appeal construed the judgment as encompassing both the disability discrimination and workers' compensation claims. *Id.* at 180. But citing Cal. Lab. Code sec. 5001, the court stated that "'the effect of the section, by its clear wording, is to make every compromise invalid until it is approved by [the WCAB].'" *Id.* (alteration in original) (quoting *Chavez v. Indus. Accident Comm'n*, 49 Cal. 2d 701, 702 (1958)). The Court of Appeal thus held that a compromise agreement seeking to settle both a civil action and a related workers' compensation claim must be deemed to have been conditioned on the WCAB's approval. *Id.* at 181. Until parties to a settlement obtain such approval, any compromise and release of workers' compensation liability is invalid. *Id.*; *see also Raischell & Cottrell, Inc.*, 249 Cal. App. 2d at 997.

Thus, the settlement agreement between Sears and Ms. Simpson is not a valid agreement to settle her workers' compensation claims because the parties failed to obtain the requisite approval from the WCAB. Because neither Sears nor Ms. Simpson has taken the crucial step to submit the settlement agreement for the WCAB's approval, any payments received under the settlement are not "amounts received under workers' compensation acts". *See Forste v. Commissioner*, 85 T.C.M. (CCH) at 1152 n.15.

C. *Section 104(a)(2)*

We now turn to petitioners' alternative claim that 10% to 20% of the $98,000 received under the settlement agreement is excludable under section 104(a)(2) as an amount received "on account of personal physical injuries or physical sickness."

1. *Section 104(a)(2) regulations*

The Supreme Court has held that for a recovery to be excludable under section 104(a)(2), a taxpayer must "demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'; * * * [in addition], the taxpayer must show that the damages were received 'on account of personal injuries or sickness.'"[9]

---

[9] In 1996 Congress amended sec. 104(a)(2) by adding the requirement that any amount received must be on account of personal injuries that are physical or sickness that is physical. Small Business Job Protection Act of

*Commissioner v. Schleier*, 515 U.S. at 337. The requirement that recovery be based on a tortlike action was rooted in the former regulations, *see* sec. 1.104–1(c), Income Tax Regs., before amendment by T.D. 9573, 2012–12 I.R.B. 498 (former regulations), which for the first time "formally * * * linked identification of a personal injury for purposes of §104(a)(2) to traditional tort principles".[10] *Burke*, 504 U.S. at 234; *see also* T.D. 6500, 25 Fed. Reg. 11402, 11490 (Nov. 26, 1960).

Fifteen years after Congress amended section 104(a)(2) in 1996 to state that the section applies to personal injuries and sickness that are physical, the Secretary amended the regulations and abandoned the "based upon tort or tort type rights" requirement so long as recovery is for personal physical injuries or physical sickness even if recovery is under a statute that does not provide for a broad range of tort remedies. *See* sec. 1.104-(c), Income Tax Regs.[11]

---

1996, Pub. L. No. 104–188, sec. 1605, 110 Stat. at 1838.

[10] The former regulations read as follows:

Section 104(a)(2) excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Current sec. 1.104–1(c)(3), Income Tax Regs., "applies to damages paid pursuant to a written binding agreement, court decree, or mediation award entered into or issued after September 13, 1995, and received after January 23, 2012. Taxpayers also may apply these final regulations to damages paid pursuant to a written binding agreement, court decree, or mediation award entered into or issued after September 13, 1995, and received after August 20, 1996."

[11] The preamble of the amended regulations, T.D. 9573, 2012–12 I.R.B. 498, states:

Before the 1996 amendment, the section 104(a)(2) exclusion was not limited to damages for physical injuries or sickness. The tort-type rights test was intended to distinguish damages for personal injuries from, for example, damages for breach of contract. Since that time, however, *Commissioner v. Schleier*, 515 U.S. 323 (1995), has interpreted the statutory "on account of" test to exclude only damages directly linked to "personal" injuries or sickness. Furthermore, under the 1996 Act, only damages for personal physical injuries or physical sickness are excludable. These legislative and judicial developments have eliminated the need to base the

Continued

We have said that "[s]ettlement amounts which are paid to settle workers' compensation claims are not excludable from gross income under section 104(a)(2) * * * [because] claims for workers' compensation do not necessarily involve tort or tort type rights." *Forste v. Commissioner*, 85 T.C.M. (CCH) at 1155 ("A worker's compensation claim is not itself a tort or tort type cause of action since its elements involve fixed awards and since it is based on no-fault principles."). Hence, absent a change in the law that applied in this case, the result here would seem to flow from our statement in *Forste*. [12] Such a change in law, however, appears in the new regulations which have dispensed with the "based upon tort or tort type rights" requirement outlined in *Burke* and its progeny.

The parties do not dispute the validity of the new regulations, and in the setting at hand we apply them as written. [13] In other words, under the applicable regulations, even if payments under a settlement of a workers' compensation claim are not excludable under section 104(a)(1) because they fail to be "amounts received under workmen's compensation acts", some or all of the payments may nonetheless be

section 104(a)(2) exclusion on tort cause of action and remedy concepts.

[12] As Mr. Anton's testimony shows, the workers' compensation claim that formed the basis of Ms. Simpson's eventual settlement with Sears provided only the types of fixed and limited benefits that were incongruous with traditional tort or tort type damages. Permanent disability benefits under California laws, which underlaid a portion of the settlement amount, are intended to compensate an injured worker for her diminished earning capacity resulting from her work-related injuries. *Gamble v. Workers' Comp. Appeals Bd.*, 143 Cal. App. 4th 71, 80 (Ct. App. 2006). Similarly, temporary disability benefits under California laws, which formed the remaining portion of Ms. Simpson's settlement, seek to provide an injured employee interim wage replacement assistance during the period she is healing. *Id.* at 79–80. Thus, the remedial scheme under the California laws does not appear to compensate an injured employee for tortlike personal injuries that are broad in scope. But it instead appears to address narrowly and exclusively "'legal injuries of an economic character'", *Commissioner v. Schleier*, 515 U.S. at 335 (quoting *Burke*, 504 U.S. at 238–239), because it aims only to restore the injured employee to the economic position that the State has deemed she would have occupied absent the disability or disabilities the occupational injuries have caused.

[13] The new regulations may be applied retroactively at the desire of the taxpayer. Sec. 1.104–1(c)(3), Income Tax Regs. The new regulations are favorable to petitioners, and we thus apply the regulations retroactively to their benefit.

excluded from gross income under section 104(a)(2) if the taxpayer can show the portion of the workers' compensation claim that is predicated on the taxpayer's personal physical injuries or physical sickness. As we elaborate below, we find that a portion of the settlement amount was to compensate Ms. Simpson for her personal physical injuries and physical sickness.

### 2. *Amount attributable to personal physical injuries or physical sickness*

On the basis of admissible and credible extrinsic evidence, we have found that Sears and Ms. Simpson intended to settle her potential workers' compensation claims. The record has also established that she suffered physical personal injuries and sickness forming part of the basis of her workers' compensation claims. Viewing the entire record, we conclude that the settlement of Ms. Simpson's workers' compensation claims had elements intended to compensate those physical personal injuries and sickness. Because the record before us "is not susceptible of any precisely accurate determination" of the extent to which the settlement was attributable to Ms. Simpson's personal physical injuries and sickness, we use our best judgment and find that 10% of the settlement payment of $98,000 was made on account of those physical injuries and physical sickness (other than emotional distress). *See generally Eisler v. Commissioner*, 59 T.C. 634, 641 (1973). As we stated before, when a precise determination cannot be made, "the most that can be expected of us is the exercise of our best judgment based upon the entire record." *Id.* This we have endeavored to do. Accordingly, we conclude 10% of Ms. Simpson's settlement payment of $98,000 is excludable from gross income under section 104(a)(2).

### III. *Deduction for attorney's fees and court costs*

Because we have concluded that the settlement amount was not received under a workers' compensation act, we now have to decide whether $152,000 of the settlement amount allocated to attorney's fees and court costs is deductible under section 62(a)(20).

Section 62(a)(20) allows an above-the-line deduction for attorney's fees and court costs paid by, or on behalf of, a tax-

payer in connection with any action involving an unlawful discrimination claim. *See also* sec. 62(e) (defining "unlawful discrimination"). The amount of a deduction under this section cannot exceed the amount includible in the taxpayer's gross income for the taxable year on account of a judgment or settlement resulting from such claim. Sec. 62(a)(20) (last sentence).

At trial respondent conceded that petitioners were entitled to deduct under section 62(a)(20) a portion of the settlement amount allocated to attorney's fees and court costs. [14] On brief, respondent argues that petitioners can deduct only $113,985.60 because Mr. Anton represented to respondent that this was what he received. Petitioners maintain the entire $152,000 is deductible because Mr. Anton used $38,014.40 of the $152,000 to reimburse petitioners for the court costs that they paid over the years of the litigation.

Deductions are a matter of legislative grace, and a taxpayer bears the burden of producing sufficient evidence to substantiate any allowable deduction under the Code. Sec. 6001; Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); sec. 1.6001–1(a), Income Tax Regs. Under the familiar *Cohan* rule, where a taxpayer is able to demonstrate that she has paid or incurred a deductible expense but cannot substantiate the precise amount, the Court may estimate the amount of the expense if the taxpayer produces credible evidence providing a reasonable basis for the Court to do so. *Cohan v. Commissioner*, 39 F.2d 540, 544 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 743 (1985).

Mr. Anton testified credibly at trial that $38,014.40 was paid to reimburse petitioners for the court costs relating to Ms. Simpson's unlawful discrimination suit. In other words,

---

[14] It appears to be factually inconsistent for petitioners to maintain, on the one hand, that the $250,000 was includible in their gross income "*on account of* a judgment or settlement * * * *resulting* from * * * [an unlawful discrimination claim]" and on the other hand, that Ms. Simpson and Sears intended to allocate the entire settlement value to Ms. Simpson's workers' compensation claims and nothing to the employment discrimination suit. If none of the $250,000 was allocable to the unlawful discrimination suit and if Sears would not have entered into the settlement agreement but for Ms. Simpson's workers' compensation claims, it would appear that none of the attorney's fees and court costs are deductible under sec. 62(a)(20) by virtue of the last sentence of that section. But because respondent has conceded this issue, we need not address it.

Mr. Anton's testimony shows that petitioners paid $38,014.40 in court costs and $113,985.60 in attorney's fees. The settlement agreement that Ms. Simpson and Sears negotiated at arm's length corroborates Mr. Anton's testimony. In sum, the credible evidence on this issue provides a reasonable basis for us to conclude that petitioners paid $152,000 in attorney's fees and court costs. Accordingly, they are entitled to deduct this amount under section 62(a)(20).

Any arguments not discussed in this Opinion are irrelevant, moot, or lacking in merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*