[No. B219935. Second Dist., Div. Six. Oct. 14, 2010.]

WENDY ANN STELLER, Plaintiff and Appellant, v.
SEARS, ROEBUCK AND CO., Defendant and Respondent.

## Counsel

Wittenburg, O'Neill & Gray and George L. Wittenburg for Plaintiff and Appellant.

Hunton & Williams, Belynda B. Reck and Roland Juarez for Defendant and Respondent.

## OPINION

**YEGAN, Acting P. J.**—Counsel attending a mandatory settlement conference in superior court are encouraged to settle all differences between the parties. But, if they want to settle a civil action and a related workers' compensation action, they must obtain approval of the Workers' Compensation Appeals Board (WCAB). As we explain, the difficulty is not insurmountable and we fashion a remedy which is practical and workable, i.e., the settlement is conditional upon WCAB approval.

Wendy Ann Steller appeals from the judgment enforcing a settlement agreement between her and respondent, Sears, Roebuck and Co., erroneously sued as Sears Holdings Management Company. (Code Civ. Proc., § 664.6.)[1] She contends that the trial court erroneously interpreted the settlement agreement as encompassing both of her actions against respondent: a civil action for disability discrimination and a workers' compensation action. She argues that the settlement agreement encompassed only her civil action because Labor Code section 5001 requires WCAB approval before a workers' compensation claim can be settled.

Neither the settlement agreement nor the judgment expressly requires that settlement of the workers' compensation claim be approved by the WCAB. But, we construe the judgment as requiring the WCAB's subsequent approval. As so construed, we affirm the judgment. We also conclude that, because the settlement agreement was ambiguous, the trial court should have considered extrinsic evidence of the parties' intent. But this error was harmless and we easily conclude that the trial court would have enforced the settlement even if it had considered the extrinsic evidence.

### Factual and Procedural Background

In April 2008 appellant filed a civil action for disability discrimination against respondent. She claimed that respondent had "failed to reinstate her with reasonable accommodation to her disability upon termination of a workers['] compensation leave of absence because of her disability, a bad back." Concurrently with this action, appellant "was pursuing a workers['] compensation proceeding . . . against [respondent] . . . ." The parties were represented by different counsel before the WCAB. Appellant's workers' compensation claim arose "from the same alleged back injury" as the disability discrimination claim.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

In April 2009 respondent served appellant with an offer to compromise pursuant to section 998 (offer). The offer was made in the civil action and does not expressly mention the workers' compensation action. The offer stated: "In return for the acceptance of the terms of this offer, [respondent] will pay [appellant] the total sum of $95,000." Paragraph 4 of the offer declared that payment of the $95,000 "includes, and shall operate as a satisfaction of all claims for, [appellant's] alleged damages, costs and expenses, attorneys' fees and interest asserted or that could have been asserted by [appellant] in this action, *as well as all demands, actions, liabilities, obligations, damages and/or causes of action arising from this lawsuit or relating to [appellant's] employment with [respondent].*" (Italics added.) The italicized language appeared at lines 17 to 18 of paragraph 4. The offer required appellant to "dismiss the above-captioned lawsuit," i.e., the disability discrimination action. But the offer did not expressly mention the workers' compensation action or its case number.

On May 4, 2009, the parties attended a mandatory settlement conference in superior court. After discussing settlement both in and out of chambers, appellant's counsel announced in open court that his client accepted respondent's offer and the matter was settled. In June 2009 appellant filed a section 664.6 motion for entry of a $95,000 judgment in the disability discrimination action. Appellant argued that "the only legally permissible interpretation of the § 998 Offer is that it did not include the settlement of the Workers['] Compensation proceeding within the dollar amount contained in the offer." Respondent filed a cross-motion for entry of a judgment specifying "that the offer represents the settlement of [appellant's] . . . disability discrimination suit *and* . . . [appellant's] related workers' compensation claim." Both parties submitted declarations in support of their motions. The declarations contained extrinsic evidence of the parties' intent.

A hearing on the motions was conducted in August 2009. The trial court ruled that the language of paragraph 4, lines 17 to 18, unambiguously applied to all claims relating to appellant's employment, including the workers' compensation claim. It did not consider the extrinsic evidence contained in the parties' declarations saying: "The 998 offer was signed in open court by [appellant's counsel], and the court's interpretation of paragraph 4 of the 998, and I don't think we have to go any farther than that. [*Sic.*] So the declarations and everything else about what was discussed in negotiation we don't need to even consider that. [¶] All we have to consider is the 998 [offer] language, and I'm focused on paragraph 4 in lines 17 and 18, and the court feels that is sufficient enough for the court to grant the motion to compel the settlement brought by [respondent] pursuant to 664.6 . . . ." On September

15, 2009, the court signed a formal order granting respondent's "Motion to Enforce Terms of Settlement Agreement." The order states that the language of paragraph 4, lines 17 and 18, "is sufficient to include any workers' compensation claim [appellant] has arising from this lawsuit or relating to her employment with [respondent]."

*Section 664.6 and Labor Code Sections 5001, 5002*

Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." " 'Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' [Citation.]" (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 [60 Cal.Rptr.3d 693].)

We construe the judgment as encompassing both the disability discrimination and workers' compensation claims. But, as indicated, pursuant to Labor Code sections 5001 and 5002, the settlement agreement could not compromise or release appellant's workers' compensation claim without the approval of the WCAB.

Labor Code section 5001 provides in relevant part: "No release of liability or compromise agreement is valid unless it is approved by the appeals board or referee." Labor Code section 5002 provides: "A copy of the release or compromise agreement signed by both parties shall forthwith be filed with the appeals board. Upon filing with and approval by the appeals board, it may, without notice, of its own motion or on the application of either party, enter its award based upon the release or compromise agreement."

█ "Undoubtedly the Legislature, in enacting this section [(Lab. Code, § 5001)], was primarily concerned with protecting workmen who might agree to unfortunate compromises [of workers' compensation liability] because of economic pressure or lack of competent advice. [Citation.] However, the effect of the section, by its clear wording, is to make every compromise invalid until it is approved [by the WCAB]. [Citations.]" (*Chavez v. Industrial Acc. Com.* (1958) 49 Cal.2d 701, 702 [321 P.2d 449].)

Thus, there is a "significant difference in legal effect between a release of tort liability and a release of workmen's compensation liability. A tort release is effective upon execution, but a compromise and release of workmen's compensation liability is invalid until approved by the·Workmen's Compensation Appeals Board. [Citations.] . . . These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release . . . ." (*Johnson v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 973 [88 Cal.Rptr. 202, 471 P.2d 1002].)

The requirement that the WCAB approve a compromise and release of workers' compensation liability is set forth in the California Code of Regulations, title 8, section 10882: "The Workers' Compensation Appeals Board shall inquire into the adequacy of all compromise and release agreements and stipulations with request for award, and may set the matter for hearing to take evidence when necessary to determine whether the agreement should be approved or disapproved, or issue findings and awards."

■ Both the trial court and the parties are presumed to have known that a settlement of the workers' compensation claim would require the WCAB's approval. The record does support the conclusion that the attorneys and the trial court were aware of this rule and that the WCAB's approval was contemplated in the future. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [6 Cal.Rptr.3d 723, 79 P.3d 1030] ["we apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law' "]; *Alpha Beta Food Markets v. Retail Clerks* (1955) 45 Cal.2d 764, 771 [291 P.2d 433] [" 'all applicable laws in existence when an agreement is made, which laws the parties are presumed to know and to have had in mind, necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated' "].) Accordingly, we hold where, as here, the parties seek to settle both a civil action and a related workers' compensation claim at a superior court settlement conference, it must be conditional upon WCAB approval. This is a practical and workable solution to the procedural difficulty presented. We presume that counsel and clients act in good faith at settlement conference and would only settle upon fair terms that will, in most cases, be acceptable to the WCAB. We need not, and do not, comment on the allocation of attorney fees in the WCAB action. The amount of attorney fees is addressed to the discretion of the workers' compensation judge.[2]

---

[2] " 'Wise ajudicaton has its own time for ripening.' [Citation.]" (*Berry v. City of Santa Barbara* (1995) 40 Cal.App.4th 1075, 1088 [47 Cal.Rptr.2d 661].) In her briefs, appellant conclusionally mentions this theoretical problem. We exercise restraint and do not decide an issue which may never arise.

*Ambiguity of the Settlement Agreement*

The trial court erred in determining that, as a matter of law, the language of paragraph 4, lines 17 and 18, unambiguously encompassed appellant's workers' compensation claim. This determination is subject to our independent review. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) The language in question is ambiguous because it does not expressly mention the pending workers' compensation action. Further ambiguity arises because the settlement agreement required appellant to "dismiss the above-captioned lawsuit," i.e., the disability discrimination action, but did not require her to dismiss the workers' compensation action. Finally, the settlement agreement is ambiguous because it did not expressly require the approval of the WCAB, yet such approval is required to compromise appellant's workers' compensation claim.

A procedurally reverse situation occurred in *Lopez v. Sikkema* (1991) 229 Cal.App.3d 31 [280 Cal.Rptr. 7]. In *Lopez* the plaintiffs filed a civil action for wrongful death against the decedent's employer. A related WCAB action was also filed. The employer filed a motion for summary judgment on the ground that the plaintiffs "had executed a compromise and release approved by the WCAB which released [the employer] from liability for any and all claims arising out of decedent's death." (*Id.*, at p. 34.) The compromise and release did not mention the civil action, which was pending when the settlement document was signed. The trial court granted the employer's motion for summary judgment. In reversing the judgment, the appellate court reasoned as follows: "If the mandatory compromise and release form executed by [plaintiffs] was intended to cover claims which are not compensable under the workers' compensation act, it should have contained express language to that effect. Indeed, *since the civil action was pending at the time the parties executed the compromise and release, the settlement document would be expected to recite that the release included the particular lawsuit.* It does not. Absent such express language, we cannot say as a matter of law [plaintiffs] released [the employer] from liability for civil damages by execution of the release form. The ambiguity in the language presents triable issues of material fact about whether the parties understood the compromise and release to release respondent from liability for claims then pending in the civil proceeding which are not compensable under the workers' compensation act." (*Id.*, at pp. 38–39, italics added; see also *Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 863 [2 Cal.Rptr.2d 452] [in concluding that workers' compensation release did not apply to pending civil action, appellate court considered "perhaps most importantly" that "no explicit reference to the [civil action] appears in the release"].)

*Claxton v. Waters* (2004) 34 Cal.4th 367, 379, footnote 2 [18 Cal.Rptr.3d 246, 96 P.3d 496], is factually distinguishable. There, our Supreme Court declared that *Lopez* and *Asare* "are not to be followed to the extent that they allow the admission of extrinsic evidence to try to show that the release [in the standard preprinted workers' compensation compromise and release form] extends to claims outside the workers' compensation system." In *Claxton* the Supreme Court held that this form "releases only those claims that are within the scope of the workers' compensation system, and does not apply to claims asserted in separate civil actions." (*Id.*, at p. 376, fn. omitted.)

### The Trial Court Erroneously Failed to Consider Extrinsic Evidence of the Parties' Intent, but the Error Was Harmless

■ "Extrinsic evidence can be offered not only 'where it is obvious that a contract term is ambiguous, but also to expose a latent ambiguity.' [Citation.]" (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 920 [74 Cal.Rptr.3d 733].) Because the language of the settlement agreement was ambiguous, the trial court was required to consider extrinsic evidence of the parties' intent. "Where a word or a phrase used in a contract can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean. [Citation.] The court should not limit the 'determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous' when the language is reasonably subject to multiple interpretations. [Citation.]" (*Rainier Credit Co. v. Western Alliance Corp.* (1985) 171 Cal.App.3d 255, 261 [217 Cal.Rptr. 291].)

■ We reject appellant's contention that, because respondent drafted the offer, any ambiguity in the offer should be construed against it pursuant to Civil Code section 1654, which provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." The rule of section 1654 "is to be used only when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation. [Citations.] The rule does not stand for the proposition that, in every case where one of the parties to a contract points out a possible ambiguity, the interpretation favored by the nondrafting party will prevail. The rule remains that the trier of fact will consider any available extrinsic evidence to determine what the parties actually intended the words of their contract to mean. [Citation.] Only in those instances where the extrinsic evidence is either lacking or is insufficient to resolve what the parties intended the terms of the contract to mean will the rule that ambiguities are resolved against the drafter of the

contract be applied. [Citation.]" (*Rainier Credit Co. v. Western Alliance Corp., supra*, 171 Cal.App.3d at pp. 263–264.)

In interpreting the settlement agreement, the trial court did not consider the extrinsic evidence contained in the parties' declarations. It stated that it did not need "to go any farther than" the language of paragraph 4, lines 17 to 18. The court went on to say: "So the declarations and everything else about what was discussed in negotiation we don't need to even consider that. [¶] All we have to consider is the 998 [offer] language . . . ."

The trial court's decision not to consider the extrinsic evidence does not mean that the judgment must be reversed. "[R]eversal should be ordered only after a thorough review of the entire record to determine if it is reasonably probable that a result more favorable to [appellant] would be reached in the absence of the error. Otherwise, such error will be found harmless. [Citation.]" (*Rainier Credit Co. v. Western Alliance Corp., supra*, 171 Cal.App.3d at p. 262.)

Respondent's counsel, Belynda B. Reck, submitted a declaration setting forth in detail the negotiations leading to the signing of the settlement agreement. Reck declared as follows: Before preparing the offer, she proposed to appellant's counsel, George L. Wittenburg, a "global settlement" that would encompass both the disability discrimination and workers' compensation claims. "Mr. Wittenburg indicated that a global settlement including the workers' compensation claim would be helpful in effectuating settlement and that such a settlement structure would be acceptable to his client." After appellant was served with the offer, Reck "confirmed in telephone conversations with Mr. Wittenburg" that the offer "represented a global settlement" of all of appellant's claims, including the workers' compensation claim. At the settlement conference on May 4, 2009, Reck "again confirmed with Mr. Wittenburg" that the offer was a global settlement. She "*emphasized that the only way [respondent] was able to reach the figure in the 998 offer was with funds from the workers' compensation settlement.*" (Italics added.)

Appellant's version of the negotiations is set forth in a declaration submitted by Mr. Wittenburg. He perfunctorily summarized the negotiations as follows: "Settlement discussions were held both in chambers and between counsel outside of the presence of the Court. . . . During those discussions, counsel for [respondent] did mention that she had received some money from the workers['] compensation attorneys, but she didn't ever say that the two proceedings were tied together." Wittenburg went on to state his uncommunicated "understanding" of the offer, but his belief is irrelevant. "The terms of a contract are determined by objective rather than by subjective criteria. The

question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe. [Citations.]" (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].) " 'The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 980 [41 Cal.Rptr.3d 48].)

Based on the parties' objective manifestations of agreement and expressions of intent, a reasonable person, and the superior court, could draw only one conclusion: that the parties intended the settlement agreement to encompass both the disability discrimination and workers' compensation claims. Wittenburg makes a self-contradictory statement when he declares, "[C]ounsel for [respondent] did mention that she had received some money from the workers['] compensation attorneys, but she didn't ever say that the two proceedings were tied together." How could the two proceedings not be "tied together" if funds allocated to the workers' compensation claim were going to be applied toward payment of the $95,000 settlement? Wittenburg's self-contradictory statement corroborates Reck's declaration that she "emphasized that the only way [respondent] was able to reach the figure in the 998 offer was with funds from the workers' compensation settlement."

Where, as here, "the extrinsic evidence points only one way, . . . the meaning of the language in question may be ascertained as a matter of law and may be reviewed by an appellate court de novo." (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265].) Considering the extrinsic evidence, we conclude that the only plausible interpretation of the settlement agreement is that it encompassed both the disability discrimination and workers' compensation claims. We are confident that on theoretical remand to the superior court, it would so rule. Because it is not "reasonably probable that a different result would have [been] obtained if the trial court had properly considered extrinsic evidence," we must affirm the judgment. (*Rainier Credit Co. v. Western Alliance Corp., supra,* 171 Cal.App.3d at p. 264.)

*Conclusion*

The judgment is construed as (1) impliedly decreeing that the terms of the settlement agreement encompass the settlement of both the disability discrimination and workers' compensation claims, and (2) impliedly decreeing that the validity of the settlement agreement is conditional upon the WCAB's

approval of the settlement of the workers' compensation claim. If the WCAB does not grant its approval, the settlement agreement shall be of no force or effect. As so construed, the judgment is affirmed. Respondent shall recover its costs on appeal.

Coffee, J., and Perren, J., concurred.