Filed 6/8/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ADRIAN CAMACHO, | D073280 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1507049) |
| TARGET CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, John W. Vineyard, Judge. Reversed.

Rodriguez & King, Rob A. Rodriguez, Stephen A. King and Richard A. Apodaca for Plaintiff and Appellant.

Foley & Lardner, Krista M. Cabrera and Archana A. Manwani for Defendant and Respondent.

I.

INTRODUCTION

Plaintiff Adrian Camacho appeals from a judgment entered after the trial court granted summary judgment in favor of defendant Target Corporation (Target) on

Camacho's causes of action for discrimination based on sexual orientation, harassment causing a hostile work environment, failure to prevent harassment and discrimination, retaliation, constructive termination in violation of public policy, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, supervision, and retention, and a violation of the Bane Act (Civ. Code, § 52.1). The trial court concluded that language included in an addendum to a preprinted compromise and release form utilized to settle Camacho's workers' compensation action against Target constituted a broad release of any and all potential claims that Camacho may have had against Target, including claims falling outside the workers' compensation system.

After reviewing the relevant language in the addendum and considering that language in the context of the entire settlement agreement, we conclude that the trial court erred in determining that certain language contained in the addendum to the settlement agreement executed by the parties in Camacho's workers' compensation case constitutes a general release of all of Camacho's civil claims. We therefore reverse the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

Camacho began working as a cashier at Target in August 2012. Target has a zero-tolerance policy with respect to harassment and discrimination in the workplace. Camacho complained to his supervisor and to individuals in the Human Resources Department, and also called Target's "Anonymous Hotline," regarding repeated verbal

harassment from his coworkers at Target based on the fact that he is gay. According to Camacho, his coworkers would ridicule, mimic, and mock him, sometimes in the presence of Target customers.[1]

Camacho alleges that rather than take corrective action in response to his complaints, Target instead retaliated against him by denying him a promotion and allowing the hostile work conditions to continue, unabated.

According to Camacho, he was constructively discharged because the situation had become intolerable at his workplace and he "felt forced to resign." (Boldface omitted.) He resigned his employment with Target on September 30, 2014.

B. *Procedural background*

In August 2014, prior to resigning, Camacho filed a claim for workers' compensation benefits, based on his assertion of workplace injuries that he suffered as a result of the harassment he endured while employed at Target. Specifically, Camacho asserted injuries related to head and neck pain, as well as digestive and psychological problems. Camacho was represented in the workers' compensation action by the same attorney who represented him in this case.

In March 2015, Camacho settled his workers' compensation case with Target. He executed the mandatory preprinted Compromise and Release (C&R) form that is utilized in all workers' compensation cases. Camacho and Target also executed an addendum

---

[1]     A customer who witnessed Camacho being harassed by coworkers reported one of these incidents to Target management.

3

(Addendum A) that includes additional terms.[2]  Addendum A was attached to the C&R. Camacho received $12,000 in exchange for executing the settlement document.

The Workers' Compensation Appeals Board (WCAB) issued an order approving the settlement between Camacho and Target approximately a week after the parties executed the C&R and Addendum.

In April 2015, Camacho received a right-to-sue letter from the Department of Fair Employment and Housing (DFEH).

In August 2015, Camacho filed the operative First Amended Complaint, in which he asserted the following causes of action for discrimination based on sexual orientation; harassment causing a hostile work environment; failure to prevent harassment and discrimination; retaliation; constructive termination in violation of public policy; intentional infliction of emotional distress; negligent infliction of emotional distress; negligent hiring, supervision, and retention; and a violation of the Bane Act (Civ. Code, § 52.1).

Target answered the complaint.

In September 2016, Target moved for summary judgment and/or summary adjudication.  After full briefing by the parties but prior to the hearing, the trial court issued a tentative ruling in favor of Target.  After oral argument, the court adopted its tentative ruling and granted Target's motion for summary judgment in its entirety.  The trial court concluded that the C&R and Addendum executed by the parties in Camacho's

---

2    We will provide the text of the provisions included in the Addendum later in this opinion.

4

workers' compensation case constitutes a general release of all potential civil claims that Camacho might have as a result of the harassment he experienced at Target. The court entered judgment in favor of Target.

Camacho filed a motion for new trial. After hearing oral argument on the motion for new trial, the court took the matter under submission. The court ultimately denied the motion.

Camacho filed a timely notice of appeal.

III.

DISCUSSION

A. *Summary judgment standards*

"Summary judgment and summary adjudication provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citations.] A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action." (*Collin v. CalPortland Co*. (2014) 228 Cal.App.4th 582, 587 (*Collin*).)

Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [that party] carries [t]his burden of production, [the moving party] causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar*

5

*v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)  In moving for summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element *X*." (*Id.* at p. 853.)  "A defendant moving for summary judgment or summary adjudication need not conclusively negate an element of the plaintiff's cause of action.  [Citations.]  Instead, the defendant may show through factually devoid discovery responses that the plaintiff does not possess and cannot reasonably obtain needed evidence."  (*Collin*, *supra*, 228 Cal.App.4th at p. 587.)

"After the defendant meets its threshold burden [to demonstrate that a cause of action has no merit], the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action or affirmative defense.  [Citations.]  The plaintiff may not simply rely on the allegations of its pleadings but, instead, must set forth the specific facts showing the existence of a triable issue of material fact.  [Citation.]  A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof."  (*Collin*, *supra*, 228 Cal.App.4th at p. 588.)

"On appeal, the reviewing court makes ' "an independent assessment of the correctness of the trial court's ruling [regarding summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." ' " (*Hesperia Citizens for Responsible Development v. City of Hesperia* (2007) 151

6

Cal.App.4th 653, 658.)  Our task is to determine whether a triable issue of material fact exists.  (*Collin*, *supra*, 228 Cal.App.4th at p. 588.)  In independently examining the record on appeal "to determine whether triable issues of material fact exist," we " 'consider[ ] all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained.' "  (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1530.)

B.  *The relevant documents*

The language of the C&R and the Addendum that form the basis of Target's contention that Camacho waived his right to bring the current claims against Target when he executed the settlement agreement in his workers' compensation case is central to this appeal.

The preprinted form C&R comprises nine pages.  There are a number of places on the form where the parties are to fill in information and/or mark specific choices or options.  In paragraph 1, which begins on page 3 of the C&R, the completed form states that "IT IS CLAIMED THAT" while Camacho was "employed as a(n) CASHIER/TEAM MEMBER" he "sustained injury arising out of and in the course of employment" at the Target located in Corona, California.  The form requests that the applicant "[s]tate with specificity the date(s) of injury(ies) and what part(s) of body, conditions or symptoms are being settled."  Camacho listed the start date of his injuries as "10/01/2013" and the end date as "08/01/2014," and identified the "Body Part[s]" to which he suffered injuries as "HEAD," "NECK," "DIGESTIVE," and "PSYCH."

In paragraph 2, the C&R includes the following language:

7

"Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation administrative law judge and payment in accordance with the provisions hereof, the employee releases and forever discharges the above-named employer(s) and insurance carrier(s) from all claims and causes of action, whether now known or ascertained or which may hereafter arise or develop as a result of the above-referenced injury(ies), including any and all liability of the employer(s) and the insurance carrier(s) and each of them to the dependents, heirs, executors, representatives, administrators or assigns of the employee. *Execution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provisions of the workers' compensation law, unless otherwise expressly stated.*"  (Italics added.)

Paragraph 3 then clarifies that "[t]his agreement is limited to settlement of the body parts, conditions, or systems and for the dates of injury set forth in Paragraph No. 1 and further explained in Paragraph No. 9 *despite any language to the contrary elsewhere in this document or any addendum*."  (Italics added.)

The next relevant paragraph for our purposes is paragraph 9, which states, "The parties wish to settle these matters to avoid the costs, hazards and delays of further litigation, and agree that a serious dispute exists as to the following issues (initial only those that apply).  ONLY ISSUES INITIALED BY THE APPLICANT OR HIS/HER REPRESENTATIVE AND DEFENDANTS OR THEIR REPRESENTATIVES ARE INCLUDED WITHIN THIS SETTLEMENT."  Below this is a list of terms.  Camacho's initials and those of a representative of Target are placed next to the following items only:

"earnings," "temporary disability," "future medical treatment," "other[:] RETRO INDEMNITY BENEFITS, MILEAGE, OUT OF POCKET," "permanent disability APPLICANT WAIVES HIS

8

RIGHT TO A MED-LEGAL AME OR PQME EVALUATION,"
"self-procured medical treatment, except as provided in Paragraph
7,[3]" and "vocational rehabilitation benefits/supplemental job
displacement benefits."[4]

Among the items next to which there are *no* initials is the term "employment."

Finally, in a box underneath the list of these items is the following statement:

"THIS COMPROMISE AND RELEASE RESOLVES ALL ISSUES
AND PARTS OF BODY ALLEGED RE CT CLAIM FROM:
10/01/2013 - 08/01/2014 TO NECK, DIGESTIVE SYSTEM -
STOMACH, NERVOUS SYSTEM / PSYCHE."[5]

The Addendum, an image of which is attached to the end of this opinion as

Appendix A, is titled "ADDENDUM A [¶] ATTACHMENT TO COMPROMISE AND

RELEASE." The Addendum includes the following six paragraphs:

"A.    PAYMENT CONDITIONS:  It is agreed that all permanent
disability advances made both before and after the execution of the
Compromise and Release will be credited against the amount in
paragraph #7, page 6.  The applicant and applicant's attorney waived
penalties and interest, if payment of the Compromise and Release is

---

[3]    It appears that the preprinted form's reference to paragraph 7 here may be an error. Paragraph 7 states, "The parties agree to settle the above claim(s) on account of the injury(ies) by the payment of the SUM OF $ ____," and provides for a listing of amounts to be deducted from the settlement amount, such as for advances that were made to the claimant.  Paragraph 6, however, states, "The parties represent that the following facts are true:  (if facts are disputed, state what each party contends under Paragraph No. 9.)" and includes a space for the claimant to state the "TOTAL MEDICAL BILLS PAID."  It thus would appear that the reference to paragraph 7 in paragraph 9 may have been intended to be a reference to paragraph 6's statement of the total medical bills paid.

[4]    There is a handwritten note next to "vocational rehabilitation benefits/supplemental job displacement benefits" that states, "Based on no evidence of permanent disability, Defendant has no liability for voucher."

[5]    Another handwritten note is also included in the box.  The note states, "Addendum A and B Re Medicare are hereby incorporated into this Agreement."  It is not clear whether the reference to Addendum A in this note is a reference to the Addendum A at issue here, since the Addendum A at issue in this case makes no reference to Medicare.

9

made within 30 days after the Order Approving Compromise and Release issues.

"B.     CONDITIONS FOR THIS COMPROMISE AND RELEASE: The following are in issue: Parts of body injured, nature and extent of permanent disability, duration of temporary disability, need for further medical treatment, self-procured medical treatment, apportionment and rehabilitation. Applicant desires a lump sum settlement and to control future medical treatment. *Defendants* desire to buy their peace. All parties desire to settle the high risk of litigation and agree that the Compromise and Release is fair and reasonable. The entire medical record as filed by the parties is incorporated by reference thereto. The applicant stipulates that they have not sustained any other injuries while employed with the defendant.

"C.     INFORMED CONSENT ON·SETTLEMENT: APPLICANT AGREES THEY HAVE BEEN PROVIDED INFORMATION CONCERNING WORKERS' COMPENSATION SETTLEMENTS, INCLUDING COMPROMISE AND RELEASE DOCUMENTS AND STIPULATIONS WITH REQUEST FOR AWARD. APPLICANT WISHES TO OBTAIN A LUMP SUM SETTLEMENT. APPLICANT HAS REVIEWED THE POSSIBLE FUTURE MEDICAL COSTS AND PERMANENT DISABILITY RATING AND AGREES THAT THE CURRENT SETTLEMENT IS FAIR. APPLICANT HAS REVIEWED THE ENTIRE CONTENTS OF THIS SETTLEMENT AGREEMENT AND UNDERSTANDS THE PROVISIONS.

"D.     VOCATIONAL REHABILITATION/SUPPLEMENTAL JOB DISPLACEMENT BENEFITS[:] As part of this settlement consideration was given to resolve/buy out the Applicant's right to prospective Vocational Rehabilitation benefits/Supplemental Job Displacement Benefits.

"E.     SETTLEMENT ACCURALS [*sic*][:] The amount in paragraph #7, page 6, includes consideration for the settlement by this Compromise and Release of any claimed, accrued medical temporary disability, vocational rehabilitation, temporary disability, mileage, penalties and interest, reinstatement, lost wages, attorney fees, costs, or any other claims for reimbursement, benefits, damages, or relief of whatever nature, include [*sic*] Labor Code §132(a) (Discrimination for filing a work injury) or Labor Code

10

§4553 (for serious and willful misconduct by the employer) claims filed, threatened, or contemplated, through the date of the Order Approving Compromise and Release.

"I HAVE READ EACH OF THE ABOVE CONDITIONS AND PARAGRAPHS AND I UNDERSTAND AND AGREE TO EACH OF THEM AS INDICATED BY MY SIGNATURE BELOW."

C.  *Background on the workers' compensation system*

1.  *Scope of workers' compensation law*

"California's workers' compensation scheme was developed early in the 20th century as a result of the inadequacy of the common law that often denied injured workers any recovery for work-related injuries.  [Citations.]"  (*Claxton v. Waters* (2004) 34 Cal.4th 367, 372 (*Claxton*).)  The purpose of the Workers' Compensation Act (Lab. Code, § 3200, et seq.) "is to protect individuals against the special risks of employment. [Citations.]  'The Act intends comprehensive coverage of injuries in employment.' " (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1061.)

The workers' compensation law applies to employee injuries "arising out of and in the course of the employment" when the statutorily specified "conditions of compensation concur."  (Lab. Code, § 3600.)  Generally, workers' compensation is the exclusive remedy for such injuries.  (*Id.*, §§ 3600, subd. (a), 3601.)  However, for example, discrimination and harassment based on race, national origin, or sex is not a normal incident of employment, and accordingly, a claim for damages under the Fair Employment and Housing Act (FEHA) would not be barred by the exclusive remedy provisions of the workers' compensation act.  (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 347.)  As the *Claxton* court explained, "[S]ome claims, including those

11

based on sexual or racial discrimination or other conduct contrary to fundamental public policy, are not subject to the exclusivity provisions of the workers' compensation law. [Citation.] Thus, such claims may be the subject of both workers' compensation proceedings *and* civil actions. [Citations.]" (*Claxton*, *supra*, 34 Cal.4th at p. 373, italics added.)[6] The Legislature "did not intend that its objective of providing relief from civil rights violations would be defeated by the exclusive remedy provision of the workers' compensation act." (*Flait v. North American Watch Corp*. (1992) 3 Cal.App.4th 467, 480.)

     2.  *The workers compensation system contains certain safeguards to protect workers' rights*

"Liability under the workers' compensation law is founded in neither tort nor contract law. [Citation.] Instead, it is liability without fault [citations], to ensure that injured workers are quickly provided benefits to relieve the effects of the industrial injury [citation]. Thus, informal rules of pleading apply to such proceedings [citation], and workers may be represented by individuals other than attorneys [citation]." (*Claxton*, *supra*, 34 Cal.4th at p. 373.) Given the more informal nature of workers' compensation

---

6     We do not understand the *Claxton* court to be suggesting that an individual could bring a cause of action for discrimination or harassment under FEHA in a workers' compensation case, but rather, that the *injury* caused by the alleged discrimination or harassment may form the basis of claims for recovery pursuant to both workers' compensation law and civil tort law. Indeed, the *Claxton* court differentiated between claims that fall within workers' compensation law and its exclusivity provisions from those that are "outside" workers' compensation law, noting that it used the phrase "claims 'outside' the workers' compensation system" to refer to "claims that are either not within the scope of workers' compensation law or not subject to the exclusivity provisions of that law." (*Claxton*, *supra*, 34 Cal.4th at p. 373.)

12

proceedings, there are certain safeguards in place to protect workers from unknowingly releasing their rights. For example, "[t]o safeguard the injured worker from entering into unfortunate or improvident releases as a result of, for instance, economic pressure or bad advice, the worker's knowledge of and intent to release particular benefits must be established separately from the standard release language of the form. [Citation.]" (*Ibid.*) Further, "[e]ven with respect to claims *within* the workers' compensation system, execution of the form does not release certain claims unless specific findings are made. [Citations.]" (*Ibid.*)

In addition, to safeguard injured workers from agreeing to unfair or unwise settlements, Labor Code section 5001 provides that no settlement is valid unless the Workers' Compensation Appeals Board or a workers' compensation referee approves the settlement. (*Steller v. Sears, Roebuck & Co*. (2010) 189 Cal.App.4th 175, 180 (*Steller*).) The board or referee must inquire into the fairness and adequacy of a settlement and may set the matter for hearing to take evidence when necessary to determine whether to approve the settlement. (*Id.* at p. 181; Cal. Code Regs., tit. 8, §§ 10870, 10882.) "These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release; it is a judgment, with 'the same force and effect as an award made after a full hearing.' [Citation.]" (*Johnson v. Workmen's Comp. App. Bd*. (1970) 2 Cal.3d 964, 973; see also *Steller*, at p. 181.)

D. *Analysis*

On appeal, Target contends that the trial court correctly concluded that Camacho settled his nonworkers' compensation claims through his execution of the C&R and

13

accompanying attachments. Target asserts that language in Addendum A constitutes a general release of all claims, both workers' compensation claims and nonworkers' compensation claims, related to the harassment and discrimination that Camacho claims to have suffered while employed at Target. The language on which Target relies to support its contention that Camacho signed a general release of both workers' compensation claims and nonworkers' compensation claims stemming from the alleged harassment and discrimination is contained in paragraph E of Addendum A, titled "SETTLEMENT ACCURALS [*sic*]." (Underscore omitted.) Specifically, Target highlights the fact that this paragraph states that the settlement amount of $12,000 "includes consideration for the settlement by this Compromise and Release of any claimed, accrued medical temporary disability, vocational rehabilitation, temporary disability, mileage, penalties and interest, reinstatement, lost wages, attorney fees, costs, *or any other claims for reimbursement, benefits, damages, or relief of whatever nature*, includ[ing] Labor Code §132(a) (Discrimination for filing a work injury) or Labor Code §4553 (for serious and willful misconduct by the employer) claims filed, threatened, or contemplated, through the date of the Order Approving Compromise and Release." (Italics added, underscore omitted.)

In arguing that the trial court correctly interpreted the language of Addendum A, Target relies primarily on *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299 (*Jefferson*), a case that Target claims "is directly on point" (some capitalization omitted).

14

In *Jefferson*, the plaintiff was employed as a teacher's assistant by the California Youth Authority from September 1992 to February 1994. She filed a workers' compensation claim in March 1994. The workers' compensation claim was based on sexual harassment that she experienced in the workplace. In October 1994, the plaintiff filed a sex discrimination claim with the DFEH, which issued her right-to-sue letter in October 1995. In July 1996, the plaintiff settled her workers' compensation claim for more than $41,000. As in this case, the settlement documents included a release form that had been approved by the WCAB. As the *Jefferson* court explained:

> "In the preprinted section of the release form, Jefferson stated clearly that, upon approval by the WCAB and payment, she 'releases and forever discharges [the Youth Authority] from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of [the claimed] injury.' " (*Jefferson*, *supra*, 28 Cal.4th at p. 302.)

The plaintiff in *Jefferson* also executed an attachment to the release form that differs in significant respects from the Addendum in this case. The *Jefferson* court described the attachment as follows:

> "In a typed attachment to the release, [the plaintiff] added: 'The Applicant [Jefferson] desires to avoid the hazards of litigation and the defendants wish to buy their peace. . . . The settlement is to compensate for all aspects of all injuries included herein. [¶] . . . [A]pplicant agrees that *this release will apply to all unknown and unanticipated injuries and damages resulting from such accident*, and all rights under Sections [*sic*] 1542 of the Civil Code of California are hereby expressly waived. [¶] . . . [¶] . . . [A]pplicant agrees that this release extends to and covers the . . . employees of the defendants . . . .' The same attachment also quoted the text of Civil Code section 1542 (hereafter section 1542), *which protects parties from inadvertently settling unknown claims*." (*Jefferson*, *supra*, 28 Cal.4th at pp. 302–303, some italics added.)

15

The WCAB approved the parties' settlement in early August 1996, and in late August the plaintiff filed a civil action against the California Youth Authority and the individual who had harassed her. After various other claims had been dismissed, a single cause of action for sex discrimination in violation of FEHA remained. (*Jefferson*, *supra*, 28 Cal.4th at p. 303.) The cause of action for sex discrimination was based on the same events that had given rise to the workers' compensation claim, and alleged the same injuries. (*Ibid.*) The trial court granted summary judgment in favor of the defendants on that cause of action, concluding that " 'the release executed by Jefferson bars her complaint as a matter of law. The release referred to matters that were clearly outside the scope of worker's compensation. Having accepted the benefit of the payment of $49,500.00 [*sic*], the Plaintiff cannot avoid the express terms of the release.' " (*Ibid.*)

The Supreme Court concluded that the language of the release that the plaintiff had signed barred her FEHA civil action. (*Jefferson*, *supra*, 28 Cal.4th at p. 303.) The court stated: "We conclude that the broad settlement language at issue here is enforceable as written. Two points in particular support our conclusion: (1) the parties included *an attachment* in their settlement agreement that *made clear their intent to settle matters outside the scope of workers' compensation*; and (2) Jefferson offered no extrinsic evidence establishing the parties' intent to exclude her FEHA claim from the settlement." (*Id.* at p. 304, italics added.)

Two years later, the Supreme Court considered the scope of another workers' compensation settlement agreement in *Claxton*, *supra*, 34 Cal.4th at p. 367. The *Claxton* court addressed *Jefferson* and specifically rejected the contention that *Jefferson* had held

16

that "an employee's execution of the preprinted workers' compensation compromise and release form, with its standard language releasing 'all claims and causes of action,' also releases claims that fall outside the workers' compensation system." (*Id.* at pp. 375–376.) Rather, the dispositive fact in *Jefferson* was that "the preprinted workers' compensation compromise and release form had *an attachment* expressing the parties' intent to have the release also apply to the employee's civil action alleging sex discrimination." (*Id.* at p. 376.) In *Claxton*, "[t]here [was] no attachment to the workers' compensation release form." (*Ibid.*)

The *Claxton* court noted that in the case before it, the compromise and release form contained the following language: " 'The nature, duration, extent and cause of the employee's disability are in dispute. Applicant desires to control his/her future medical expenses. Defendants desire to buy their peace. The parties desire to settle the hazards, risks, and delays of litigation for a lump sum certain. All parties agree that the Compromise and Release is a fair and equitable settlement. The parties require that the consideration for this Compromise and Release includes *full compensation for all injuries sustained by the applicant while employed by defendants, including all specific injuries and continuous trauma.* The medical record is herein incorporated by reference. The parties waive Labor Code § 5313 [the statute requiring the workers' compensation judge to make factual findings and a decision determining the rights of the parties].' " (*Claxton*, *supra*, 34 Cal.4th at p. 376, fn. 1, italics added.)

Despite this seemingly broad release language, the *Claxton* court explained that "[t]he form's references to disability, medical expenses, injuries sustained during

17

employment, and a waiver of findings and decisions to be made by a workers' compensation judge, suggest that the release does not apply to claims *outside* the workers' compensation system." (*Claxton*, *supra*, 34 Cal.4th at p. 376, fn. 1.) The court commented that "[i]t would be helpful to all concerned, of course, if this suggestion could be made more explicit," and "urge[d] those responsible for drafting the standard worker's compensation compromise and release form to revise that form to include a statement, in the clearest possible terms, that execution of the form has no effect on claims outside the workers' compensation system." (*Ibid.*)

The *Claxton* court thus expressly held that "the standard language of the preprinted form used in settling workers' compensation claims releases only those claims that are within the scope of the workers' compensation system, and does not apply to claims asserted in separate civil actions." (*Claxton*, *supra*, 34 Cal.4th at p. 376.) The *Claxton* court did not hold that an employee and employer may not simultaneously settle both workers' compensation claims and civil claims, but rather, that parties may not rely on the standard language in the preprinted compromise and release form provided by the WCAB in order to do so because the language in the form releases only claims that are *within* the scope of workers' compensation law. (*Id.* at p. 378.) The court explained:

> "It would be a simple matter for parties who have agreed to settle not only workers' compensation claims but also claims outside the workers' compensation system to execute another document expressing that agreement. Thus, execution of the mandatory standard preprinted compromise and release form would only establish settlement of the workers' compensation claims; the intended settlement of claims outside the workers' compensation system would have to be reflected in a separate document. (See *Jefferson*, *supra*, 28 Cal.4th 299 [attachment to workers'

18

compensation form documented release of claims outside of workers' compensation]; *Delaney*, *supra*, 14 Cal.App.4th at p. 600 [parties should augment workers' compensation form to expressly refer to release of claims outside of workers' compensation].) As is true with settlements in civil actions generally, the separate document need not identify precise claims; *it would be sufficient to refer generally to causes of action outside the workers' compensation law 'in clear and non-technical language.*' [Citation.]" (*Id.* at p. 378, italics added.)

In response to the *Claxton* court's urging that the WCAB revise the preprinted compromise and release form to make explicit the fact that execution of the form did not constitute a release of claims outside the workers' compensation law, the WCAB amended the language of its preprinted form. The revised form, which is the form used by the parties in this case, includes the following language, which makes clear that no claims outside of workers' compensation law are being released by the standard compromise and release form: "Execution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provision of the workers' compensation law, unless otherwise expressly stated."[7]

The parties in the present case agree that the standard C&R executed in this case did not serve to release Camacho's civil claims that fall outside of the workers' compensation system. Their dispute centers around what claims Camacho released when

_____

[7] In *Jefferson*, which was decided two years before *Claxton*, the parties used the former version of the preprinted WCAB form that the *Claxton* court suggested should be modified to make clear the fact that claims outside the workers' compensation system were not being settled by execution of the form unless otherwise expressly stated elsewhere.

19

he executed Addendum A. Target contends that Addendum A includes language that is effectively the same as the language in the attachment in *Jefferson*, *supra*, 28 Cal.4th at pages 302–303, and that as a result of executing the settlement documents, Camacho released *all* claims he might have against Target and its employees arising from the alleged harassment and discrimination. Camacho contends that Addendum A is, at best, ambiguous with respect to whether it covers, and thereby releases, nonworkers' compensation claims, such as Camacho's civil discrimination and harassment claims.

We interpret a release or settlement agreement under the same rules of construction that apply to contracts generally. (Civ. Code, § 1635; *Hess v. Ford Motor Co*. (2002) 27 Cal.4th 516, 524 (*Hess*).) We interpret a contract to give effect to the mutual intention of the parties at the time they formed the contract. (Civ. Code, § 1636; *Hess*, at p. 524.) We discern the parties' intention based on the written contract alone, if possible, but may also consider the circumstances under which the contract was made and its subject matter. (Civ. Code, §§ 1639, 1647; *Hess*, at p. 524.) We consider the contract as a whole, and interpret contested provisions in their context, not in isolation, with the aim of giving effect to all provisions, if doing so is reasonably possible. (Civ. Code, § 1641; *People v. Doolin* (2009) 45 Cal.4th 390, 413, fn. 17; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473 ["Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless"].)

In interpreting a contract, we give the words their ordinary and popular meaning, unless the parties or usage have given the words a specialized or technical meaning. (Civ. Code, § 1644; *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752.)

After examining the language of the entire document, including the preprinted C&R and Addendum A and considering each term within the context of the others, it is clear that there is *no reference* in either the C&R or Addendum A to any causes of action *outside* the workers' compensation system, much less to a release of such claims in "clear and nontechnical language," as is required under *Claxton*. Target relies on Paragraph E in the Addendum, noting that it includes a reference to "consideration for the settlement by this Compromise and Release of . . . any other claims for reimbursement, benefits, damages, or relief of whatever nature, . . . filed, threatened, or contemplated, through the date of the Order Approving Compromise and Release." Although this language, when read in isolation, might appear to be sufficiently broad to cover claims outside of the workers' compensation system, we do not look at a provision in a contract in a vacuum. Rather, we must consider the language in context. In that light, it is clear that this portion of the Addendum does not state, in *clear and nontechnical language*, that Camacho was releasing causes of action outside the workers' compensation system.

First and foremost in our analysis is the fact that the language on which Target relies contains no mention of claims for relief that fall outside of the workers' compensation law. In addition, the specific words on which Target relies are found

21

within a lengthy sentence that provides important context. Specifically, the entire

sentence reads:

> "The amount in paragraph #7, page 6, includes consideration for the settlement by this Compromise and Release of any claimed, accrued medical temporary disability, vocational rehabilitation, temporary disability, mileage, penalties and interest, reinstatement, lost wages, attorney fees, costs, or any other claims for reimbursement, benefits, damages, or relief of whatever nature, include [*sic*] <u>Labor Code §132(a) (Discrimination for filing a work injury)</u> or <u>Labor Code §4553 (for serious and willful misconduct by the employer)</u> claims filed, threatened, or contemplated, through the date of the Order Approving Compromise and Release."

Notably, all of the other references in this sentence are to items of relief that are

within the scope of the workers' compensation system. Even the references to Labor

Code claims are to specific claims for which specific relief is available pursuant to

workers' compensation law. (See Lab. Code, § 132a [coming within Division 1,

regarding the Department of Industrial Relations, Chapter 5, which sets forth the Division

of Workers' Compensation, and making it illegal for employers to discharge, threaten to

discharge or otherwise discriminate against an employee because he or she has filed or

made known an intention to file a claim for workers' compensation, or because the

employee "has received a rating, award, or settlement"]; see also Lab. Code, § 4553

[coming within Division 4 of the Labor Code, providing for workers' compensation and

insurance generally, and providing that the amount of worker's compensation otherwise

recoverable "shall be increased one-half, together with costs and expenses not to exceed

two hundred fifty dollars ($250), where the employee is injured by reason of the serious

and willful misconduct of" the employer or certain individuals if the employer is a partnership or corporation].)

The language in Paragraph E of Addendum A is similar to language that the *Claxton* court declined to interpret as a broad release of claims outside the workers' compensation system. The release at issue in *Claxton* included the following language: " 'consideration for this Compromise and Release includes *full compensation for all injuries sustained by the applicant while employed by defendants*, including all specific injuries and continuous trauma.' " (*Claxton*, *supra*, 34 Cal.4th at p. 376, fn. 1, italics added.) The *Claxton* court declined to interpret the words "full compensation for all injuries sustained by the applicant while employed by defendants" in isolation to mean that the parties intended for this language to cover all injuries compensable in tort law. The *Claxton* court instead interpreted those words in context, noting that there were other references in the language surrounding the broad reference to "all injuries" that indicated that this broad language was not intended to include injuries for which claims could be brought outside the workers' compensation system. Specifically, the references to "disability, medical expenses, injuries sustained during employment, and a waiver of findings and decisions to be made by a workers' compensation judge" in the sentences surrounding the reference to "all injuries," suggested that "the release does not apply to claims *outside* the workers' compensation system." (*Ibid.*) Similarly, here, all of the other references in Paragraph E—i.e., references to medical temporary disability, vocational rehabilitation, temporary disability, penalties, mileage, reinstatement, and the Labor Code references—indicate that the phrase "any other claims for reimbursement,

23

benefits, damages, or relief of whatever nature" refers to other workers' compensation claims that are identified as being settled elsewhere in the remainder of the C&R and Addendum A.

The structure and formatting surrounding this language also suggests that it was not intended by the parties to serve as a general release of all claims, as Target maintains. Importantly, the language on which Target is relying appears in the middle of a lengthy paragraph in fine print, with no other formatting indicators that would suggest that the language is of particular significance. In contrast, the text in Paragraph C and in the final, untitled paragraph of Addendum A is set out in all capital letters, seemingly indicating that the language in those locations should be given particular attention. One would expect that if the parties intended to include in this settlement a release of *all* of Camacho's claims, including nonworkers' compensation claims, language to that effect would appear prominently in the document.

The fact that the language of Addendum A does not include the language from Civil Code section 1542, or language releasing claims against Target's employees—both of which *were* included in the general release found to have been a release of all of the plaintiff's civil causes of action in *Jefferson*, *supra*, 28 Cal.4th at pages 306–307—is also significant. Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." In *Jefferson*, the parties "added a typed attachment to their compromise and release, quoting section 1542 and also stating, 'this release will

24

apply to all unknown and unanticipated injuries . . . and all rights under Section 1542 . . . are hereby expressly waived.' " (*Jefferson*, at p. 307.)  The *Jefferson* court concluded that even though the plaintiff's "FEHA action was not an 'unknown [or] unanticipated injur[y],' the addition of this language from the Civil Code in the compromise and release *establishes unambiguously* the parties' intent that the release cover possible civil claims." (*Ibid.*, italics added.)  The *Jefferson* court also relied on the fact that the attachment "states that the 'release extends to and covers the . . . *employees* of the defendants' " noting that "[c]laims against an employee are, of course, not cognizable under the workers' compensation system (Lab. Code, § 3600), and therefore, again, the terms of the compromise and release establish that the parties intended the release to cover possible civil claims." (*Ibid.*)  Nowhere in Paragraph E or elsewhere in Addendum A is there language that constitutes a waiver of Civil Code section 1542 or that purports to extend the release to Target employees.  The absence of these factors further establishes that the language on which Target relies is simply not reasonably susceptible of being viewed, in context, as similar to the broad release of any and all potential claims, including nonworkers' compensation claims, that was at issue in *Jefferson*.

That this language could be understood to constitute a general release of all claims arising from the harassment and discrimination that Camacho alleges occurred at his workplace becomes even *less* plausible when read in the context of other language in the paragraphs that surround it.  Other portions of Addendum A and the C&R more clearly express that it was the parties' intention to limit the settlement to claims within the workers' compensation law.  For example, Paragraph C of Addendum A, which is two

paragraphs before the one on which Target relies, and which is titled "<u>INFORMED CONSENT ON SETTLEMENT</u>," states that Camacho agrees that he was "PROVIDED INFORMATION *CONCERNING WORKERS' COMPENSATION SETTLEMENTS*." (Italics added.) Paragraph C further states that Camacho "HAS REVIEWED THE POSSIBLE FUTURE MEDICAL COSTS AND PERMANENT DISABILITY RATING AND AGREES THAT THE CURRENT SETTLEMENT IS FAIR." This language makes clear that this settlement agreement pertains to any and all claims related to Camacho's *workers' compensation claims concerning the injuries listed in the C&R*. Notably absent from this provision, which, by its title and content, purports to establish that Camacho was giving his *informed* consent to the settlement, is any reference to information concerning nonworkers' compensation claims, or to claims unrelated to physical injuries (i.e., claims unrelated to future medical costs or disability).

To give the language in Paragraph E of Addendum A the meaning that Target suggests—i.e., to interpret it as constituting a broad release of any and all claims arising from the alleged wrongful conduct, including nonworkers' compensation claims—would be to effectively nullify Paragraph C. It seems obvious that a paragraph purporting to establish that a plaintiff is acknowledging that he is acting pursuant to informed consent would serve no beneficial purpose if it established merely that the settling party had been provided information regarding only one subset of all of the claims that he was agreeing to settle.

Other portions of the C&R provide further context demonstrating that the parties did not intend for the language on which Target relies to serve as a broad release of any

26

and all claims, both workers' compensation claims and nonworkers' compensation claims.

For example, Paragraph 3 of the C&R specifies that "[t]his agreement *is limited to settlement of the body parts, conditions, or systems and for the dates of injury set forth in Paragraph No. 1 and further explained in Paragraph No. 9 despite any language to the contrary elsewhere in this document or any addendum*."  (Italics added.)  Paragraph 1 identifies the "Body Part[s]" as to which Camacho was claiming he suffered injuries as his "HEAD," "NECK," "DIGESTIVE," and "PSYCH."  In turn, Paragraph 9 provides a list of "issues."  By placing their initials next to certain of the listed issues, the parties indicate that those are the issues that are in dispute and identify them as the issues that the parties intend to settle.  Paragraph 9 states, "ONLY ISSUES INITIALED BY THE APPLICANT OR HIS/HER REPRESENTATIVE AND DEFENDANTS OR THEIR REPRESENTATIVES ARE INCLUDED WITHIN THIS SETTLEMENT."  Camacho's initials and those of a representative of Target are placed next to the following issues only:  "earnings," "temporary disability," "future medical treatment," "other[:] RETRO INDEMNITY BENEFITS, MILEAGE, OUT OF POCKET,"[8] "permanent disability APPLICANT WAIVES HIS RIGHT TO A MED-LEGAL AME OR PQME EVALUATION,"[9] "self-procured medical treatment, except as provided in Paragraph 7,"

_____

[8]     The capitalized portion appears to be an addition typed in by the parties in a space provided in the form.

[9]     The capitalized portion here also appears to be an addition typed in by the parties.

27

and "vocational rehabilitation benefits/supplemental job displacement benefits."[10]  The parties did not place their initials next to any of the other items on the list, including "employment" or "discrimination (Labor Code §132a)."  Given the language of Paragraph 3 that "[t]his agreement is limited to settlement of the body parts, conditions, or systems and for the dates of injury set forth in Paragraph No. 1 and further explained in Paragraph No. 9 *despite any language to the contrary elsewhere in this document or any addendum*" (italics added), and given the fact that Addendum A does not purport to settle claims outside of what are identified as the injuries suffered by Camacho in Paragraph 1 and the matters at issue as identified by the parties in Paragraph 9, it is clear that the language of Paragraph E in Addendum A cannot reasonably be interpreted as providing a broad waiver of any and all claims, including both workers' compensation claims and nonworkers' compensation claims.

Paragraph B of Addendum A further supports the notion that the parties agreed to settle only those matters listed in Paragraphs 1 and 9 of the C&R, and that those matters

---

[10]    As previously indicated, there is also a handwritten note next to "vocational rehabilitation benefits/supplemental job displacement benefits" that states, "Based on no evidence of permanent disability, Defendant has no liability for voucher."

28

relate solely to claims within the workers' compensation system. Paragraph B of Addendum A states:

> "The following are in issue: Parts of body injured, nature and extent of permanent disability, duration of temporary disability, need for further medical treatment, self-procured medical treatment, apportionment and rehabilitation. Applicant desires a lump sum settlement and to control future medical treatment. Defendants desire to buy their peace. All parties desire to settle the high risk of litigation and agree that the Compromise and Release is fair and reasonable. The entire medical record as filed by the parties is incorporated by reference thereto."

Again, there is no mention of civil claims or tort injuries, or other nonworkers' compensation claims. Rather, everything referenced in Paragraph B, including "[p]arts of body injured," disability, temporary disability, medical treatment, rehabilitation, and the "medical record," indicates that what is at issue are claims that are addressed by, or that are exclusive to, the workers' compensation system. (See *Claxton*, *supra*, 34 Cal.4th at p. 376, fn. 1 [despite reference to settlement of "all injuries," references to "disability, medical expenses, injuries sustained during employment, and a waiver of findings and decisions to be made by a workers' compensation judge" indicated that the release did not apply to claims outside workers' compensation system].)

*Claxton* requires that the parties indicate a desire to settle claims that fall outside the workers' compensation system by "refer[ring] generally to causes of action outside the workers' compensation law 'in clear and non-technical language' " (*Claxton*, *supra*, 34 Cal.4th at p. 378). Neither the C&R nor Addendum A contains any reference to

29

nonworkers' compensation claims, let alone any language that purports to release such claims in clear and nontechnical language. The language that Target insists constitutes a sweeping release of all of Camacho's claims, both workers' compensation claims and nonworkers' compensation claims, appears in the fine print of an attached addendum to a workers' compensation C&R; it is not underlined, bolded, or capitalized, in contrast with other substantive portions of the document that are highlighted through formatting. Given the nature of the language at issue, the substantive context in which it is located, the formatting and location of the language, as well as the other language contained in both Addendum A and the C&R, including the specific language in the post-*Claxton* preprinted form that *"[e]xecution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provision of the workers' compensation law, unless otherwise expressly stated*," we conclude that the language of the release at issue in this case differs in significant respects from the release at issue in *Jefferson*, *supra*, 28 Cal.4th at page 303, and that Target's reliance on *Jefferson* is therefore misplaced. There is no language in Addendum A that demonstrates that the parties intended to settle any claims other than Camacho's workers' compensation claims.

The trial court thus erred in granting summary judgment in favor of Target on the ground that Camacho released nonworkers' compensation claims when he executed his workers' compensation settlement documents. The judgment must therefore be reversed.

30

IV.

DISPOSITION

The judgment of the trial court is reversed.  Costs on appeal are awarded to appellant.


                                                                    AARON, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

# Appendix A

RE: *Adrian Camacho v Target Corporation*
WCAB NO. — ADJ 9571707

### ADDENDUM A
### ATTACHMENT TO COMPROMISE AND RELEASE

A. **PAYMENT CONDITIONS:** It is agreed that all permanent disability advances made both before and after the execution of the Compromise and Release will be credited against the amount in paragraph #7, page 6. The applicant and applicant's attorney waived penalties and interest, if payment of the Compromise and Release is made within 30 days after the Order Approving Compromise and Release issues.

B. **CONDITIONS FOR THIS COMPROMISE AND RELEASE:** The following are in issue: Parts of body injured, nature and extent of permanent disability, duration of temporary disability, need for further medical treatment, self-procured medical treatment, apportionment and rehabilitation. Applicant desires a lump sum settlement and to control future medical treatment. Defendants desire to buy their peace. All parties desire to settle the high risk of litigation and agree that the Compromise and Release is fair and reasonable. The entire medical record as filed by the parties is incorporated by reference thereto. The applicant stipulates that they have not sustained any other injuries while employed with the defendant.

C. **INFORMED CONSENT ON SETTLEMENT:** APPLICANT AGREES THEY HAVE BEEN PROVIDED INFORMATION CONCERNING WORKERS' COMPENSATION SETTLEMENTS, INCLUDING COMPROMISE AND RELEASE DOCUMENTS AND STIPULATIONS WITH REQUEST FOR AWARD. APPLICANT WISHES TO OBTAIN A LUMP SUM SETTLEMENT. APPLICANT HAS REVIEWED THE POSSIBLE FUTURE MEDICAL COSTS AND PERMANENT DISABILITY RATING AND AGREES THAT THE CURRENT SETTLEMENT IS FAIR. APPLICANT HAS REVIEWED THE ENTIRE CONTENTS OF THIS SETTLEMENT AGREEMENT AND UNDERSTANDS THE PROVISIONS.

D. **VOCATIONAL REHABILITATION/SUPPLEMENTAL JOB DISPLACEMENT BENEFITS** As part of this settlement consideration was given to resolve/buy out the Applicant's right to prospective Vocational Rehabilitation benefits/Supplemental Job Displacement Benefits.

E. **SETTLEMENT ACCURALS** The amount in paragraph #7, page 6, includes consideration for the settlement by this Compromise and Release of any claimed, accrued medical temporary disability, vocational rehabilitation, temporary disability, mileage, penalties and interest, reinstatement, lost wages, attorney fees, costs, or any other claims for reimbursement, benefits, damages, or relief of whatever nature, include Labor Code §132(a) (Discrimination for filing a work injury) or Labor Code §4553 (for serious and willful misconduct by the employer) claims filed, threatened, or contemplated, through the date of the Order Approving Compromise and Release

I HAVE READ EACH OF THE ABOVE CONDITIONS AND PARAGRAPHS AND I UNDERSTAND AND AGREE TO EACH OF THEM AS INDICATED BY MY SIGNATURE BELOW.

By: _____ 05/15
    Applicant & Date

By: _____
    Attorney for Applicant & Date